**[Cite as *State v. Hagar*, 2020-Ohio-910.]**

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108317 |
| v. | : | |
| DOMINIC HAGAR, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 12, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-18-625881-A, CR-18-626031-A, CR-18-627536-A,
CR-18-629475-A, and CR-18-633038-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and James M. Rice, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and David Martin King, Assistant Public Defender, *for appellant.*

PATRICIA ANN BLACKMON, P.J.:

{¶ 1}　Dominic Hagar appeals his guilty plea to multiple counts of aggravated robbery and associated offenses and his resulting prison sentence of 38 years and nine months.　Hagar assigns the following errors for our review:

I.　The trial court erred when it did not order an evaluation for competence to stand trial and sanity at the time of the act prior to taking Mr. Hagar's plea in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

II.　The trial court erred when it did not determine that Mr. Hagar understood the nature of the offenses, the effects of the plea, and that he was waiving certain constitutionally guaranteed rights by pleading guilty in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

III.　The trial court erred by denying Mr. Hagar's Motion to Remove Counsel in violation of the accused's rights under Article 1 [sic], Section 10 of the Ohio Constitution and the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Crim.R. 44.

IV.　The trial court erred by denying the accused's Motion to Withdraw his plea in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

V.　Mr. Dominic Hagar was denied Due Process when the trial court failed to make a finding as to the accused's mental health prior to proceeding to sentence in violation of the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

VI.　The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.11 and R.C. 2929.12 and the purposes and principles of felony sentencing guidelines thereby denying Mr. Hagar Due Process of law in violation of the Fifth,

Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

VII. Mr. Dominic Hagar was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

VIII. The cumulative impact of the errors reflected in this record amounted to a denial of due process and the right to a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

{¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.

{¶ 3} On October 17, 2018, Hagar pled guilty to seven counts of aggravated robbery, one count of attempted aggravated robbery, one count of robbery, and one count of having a weapon while under disability, all with firearm specifications, in five separate criminal cases. All charges were the result of nine robberies Hagar committed between November 2017 and January 2018.

{¶ 4} On October 29, 2018, Hagar, who was represented by retained counsel at the time, filed a pro se motion to withdraw his plea, and on November 14, 2018, he filed a pro se motion to disqualify his counsel. The court held a hearing on November 27, 2019, and denied Hagar's motion to disqualify counsel, because Hagar's attorney was retained. The court notified Hagar that he could retain another attorney if he so wished and continued the hearing for a one-week period to give Hagar an opportunity to retain different counsel. The court did not rule on Hagar's pro se motion to withdraw his guilty plea at this time. Furthermore, Hagar did not retain different counsel.

{¶ 5} On November 30, 2018, Hagar's retained counsel filed a motion for a mental health evaluation of Hagar. The court granted this motion on December 4, 2018, and referred Hagar to the court psychiatric clinic for a competency to stand trial evaluation pursuant to R.C. 2945.371. On December 18, 2018, Hagar filed a pro se "judicial notice of termination of [counsel]" and a second motion to withdraw guilty plea.

{¶ 6} On January 8, 2019, the court issued a journal entry regarding Hagar's mental health evaluation, the pertinent parts of which follow:

> Hearing waived. Parties waive hearing in open court and on the record and stipulate by journal entry to the court psychiatric clinic report. * * * In his/her report dated 01/08/2019, Dr. Stephen Noffsinger, M.D., opined that the defendant refused or was unable to cooperate with the evaluation. Accordingly, Dr. Stephen Noffsinger, M.D., was unable to render an opinion as to the defendant's competency to stand trial. Therefore, and pursuant to R.C. 2945.371(C) and (D), the court orders the defendant to North Coast Behavioral Health for an inpatient competency evaluation * * *.

{¶ 7} The court held a sentencing hearing on February 14, 2019. At this hearing, the court denied Hagar's pro se motions to withdraw his guilty plea. The court also addressed Hagar's competency evaluation. According to the court, Dr. Noffsinger's January 8, 2019 report indicated a concern that Hagar "might be malingering." The court then read into the record portions of Hagar's February 6, 2019 inpatient competency evaluation from Northcoast Behavioral Healthcare, the pertinent parts of which follow.

{¶ 8} There is no record or history of Hagar being assessed, diagnosed, or treated for any prior mental illness or psychiatric issues. "There are observations

that Mr. Hagar conversed normally and without delusions to staff and others." Hagar was given psychological testing "to determine any ability of feigning or exaggerating of symptoms of mental illness. It reads, quote, Mr. Hagar scored 21 on this test, a score that is strongly suggestive of malingering, parentheses, a score of six or greater is suggest[ive] of malingering." The doctor who wrote the competency evaluation "ultimately * * * conclude[d] that Mr. Hagar is presently capable of understanding the nature and objectives of the proceedings against him and is presently capable of assisting in his defense."

{¶ 9} The court sentenced Hagar to 38 years and nine months in prison, which represents the minimum sentence for each count, plus the firearm specification sentences, all to run consecutive to one another. It is from this plea and sentence that Hagar appeals.

**Competency**

{¶ 10} Hagar's first and fifth assigned errors will be addressed together. Hagar argues that the court erred by not ordering an evaluation, prior to accepting his guilty plea, of his competency to stand trial and his sanity[1] at the time he committed the offenses. Hagar also argues that the court erred by failing to make a finding as to Hagar's mental health prior to sentencing him.

{¶ 11} Pursuant to R.C. 2945.37(G),

---

[1] Hagar's sanity at the time the offenses were committed was not raised in the trial court. Failure to raise an issue in the trial court waives a litigant's right to raise that issue on appeal. *Foster v. Wells Fargo Fin. Ohio, Inc.*, 195 Ohio App.3d 497, 2011-Ohio-4632, 960 N.E.2d 1022, ¶ 24 (8th Dist.).

[a] defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial * * *.

{¶ 12} The issue of competency may be raised by the court, the prosecutor, or the defendant, and the defendant "must carry the burden of proving, by a preponderance of the evidence, that he is not competent to stand trial." *State v. Williams*, 23 Ohio St.3d 16, 28, 490 N.E.2d 906 (1986). "If the issue is raised before the trial has commenced, the court shall hold a hearing on this issue * * *. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion." R.C. 2945.37(B).

{¶ 13} In the case at hand, the issue of Hagar's competency was not raised until November 30, 2018, when defense counsel filed a motion requesting a mental health evaluation of Hagar. This was more than a month after Hagar pled guilty. In this motion, Hagar's retained counsel states that Hagar's mother informed him on November 29, 2018, that Hagar "has expressed suicidal thoughts in phone conversations from the Cuyahoga County Jail." According to defense counsel, this was something "unbeknownst to counsel prior to the defendant entering guilty pleas."

{¶ 14} Upon review, we find that, at the time of the plea on October 17, 2018, there was no evidence to indicate that Hagar's mental health was at issue. Therefore,

the court did not err by failing to order a competency evaluation prior to accepting Hagar's guilty plea. Accordingly, Hagar's first assigned error is overruled.

{¶ 15} Hagar underwent a competency evaluation, and the parties waived the hearing and stipulated to his court psychiatric clinic report. In this report, the doctor was unable to render an opinion, and the court ordered Hagar to Northcoast Behavioral Healthcare for an inpatient competency evaluation. The court next addressed Hagar's competency at the February 14, 2019 sentencing hearing, finding that Hagar's inpatient evaluation suggested malingering and that he was competent to stand trial. Accordingly, Hagar's fifth assigned error, which suggests that the court failed to make a finding regarding his mental health, is overruled.

**Crim.R. 11 Guilty Plea**

{¶ 16} In Hagar's second assigned error, he argues that he "was in no state of mind to enter into his plea" because of his alleged mental health issues.

{¶ 17} When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution. *State v. Hanson*, 8th Dist. Cuyahoga No. 99362, 2013-Ohio-3916, citing *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179, 660 N.E.2d 450.

{¶ 18} To ensure that a plea to a felony charge is knowingly, intelligently, and voluntarily entered into, a trial court must follow the dictates of Crim.R. 11(C)(2). This provision provides that the court must address defendants personally and (1)

determine that they understand the nature of the charges against them and of the maximum penalty involved, (2) inform them of and determine that they understand the effect of a plea of guilty or no contest and that the court may proceed with judgment and sentence, and (3) inform them of and determine that they understand the constitutional rights that they are giving up by entering into their plea. Crim.R. 11(C)(2)(a) - (c).

{¶ 19} This court conducts a de novo review to determine whether the trial court accepted a plea in compliance with Crim.R. 11(C). *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "We are required to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C)." *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 6.

{¶ 20} In the case at hand, Hagar raises only one issue with respect to the trial court's lack of compliance with Crim.R. 11. Hagar argues that he "did not understand the nature of the plea * * * [f]or all the reasons put forth in Assignment of Error I * * *." Although somewhat unclear from his appellate brief, we glean that Hagar is arguing he "was in no state of mind to enter into his plea" because of his mental health. However, after reviewing assigned errors one and five, we concluded that the trial court found Hagar competent to stand trial.

{¶ 21} Nonetheless, we review Hagar's plea hearing for compliance with Crim.R. 11. First, we find that the court addressed Hagar personally on the record and stated the following:

> So, sometimes when we go through this, part of my obligation is for me to make certain that you understand. My whole goal in this process is to make sure that whatever decision you make is made knowingly, voluntarily and intelligently.
>
> So, the knowing part, we're going to go through all these charges and I'm going to make sure you understand what charges you are pleading guilty to. I'm also going to make sure that you understand what your maximum possible sentence might be.
>
> The voluntary intelligent part, we just kind of covered that. How far did you go in school, if you can read and write. By my other conversations I've had with you, I don't have any questions about your intelligence or your intellectual ability.
>
> And the voluntary party, we will talk about that to make sure that whatever your decision is in fact your decision and someone isn't making you do this.

{¶ 22} The court then informed Hagar of the constitutional rights he was giving up by pleading guilty, including, but not limited to, the right to go to trial before a jury, the right to cross-examine witnesses, and the right to call witnesses on his behalf. Next, the court reviewed the various felonies and specifications to which Hagar was pleading guilty and informed Hagar that he was facing a maximum sentence of 135 years in prison, plus fines and restitution. The court informed Hagar that he would be serving a prison sentence as a result of his plea and he would subsequently be subject to postrelease control. The court discussed the effects of the plea with Hagar and informed him that he would order a presentence-investigation report before proceeding to sentencing. Multiple times the court asked Hagar if he

understood the proceedings and if he had any questions. Hagar responded that he understood and at times he asked the court questions, which the court answered. Finally, the court accepted Hagar's guilty plea.

{¶ 23} Upon review, we find that the trial court fully complied with Crim.R. 11 when accepting Hagar's plea. Hagar's second assigned error is overruled.

**Motion to Withdraw Guilty Plea**

{¶ 24} In Hagar's fourth assigned error, he argues that the court erred by denying both of his pro se motions to withdraw his guilty plea.

{¶ 25} "Although a defendant is not vested with an absolute right to withdraw a guilty plea, a motion for withdrawal made prior to sentencing is to be freely allowed and liberally treated." *State v. Johnson*, 8th Dist. Cuyahoga No. 83350, 2004-Ohio-2012, ¶ 34. *See also State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980); Crim.R. 32.1.

{¶ 26} Appellate courts review denials of motions to withdraw guilty pleas for an abuse of discretion. *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992). It is not an abuse of discretion to deny a motion to withdraw a guilty plea:

> (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.

*Peterseim* at paragraph three of the syllabus.

{¶ 27} Furthermore, "[i]t is well established that although a defendant has the right to counsel or the right to act pro se, a defendant does not have any right to 'hybrid representation.'" *State v. Mongo*, 8th Dist. Cuyahoga No. 100926, 2015-Ohio-1139, ¶ 13. When a criminal defendant is represented by counsel, "a trial court may not entertain a defendant's pro se motion." *Id.* at ¶ 14. *See also State v. Washington*, 8th Dist. Cuyahoga Nos. 96565 and 96568, 2012-Ohio-1531, ¶ 11 ("Because [defendant] chose to proceed with legal representation, the court could not consider [defendant]'s motion to withdraw his plea, which his appointed counsel did not agree with"); *State v. Pizzaro*, 8th Dist. Cuyahoga No. 94849, 2011-Ohio-611, ¶ 9 ("Had the trial court entertained defendant's pro se motion while defendant was simultaneously being represented by appointed counsel, this would have effectively constituted hybrid representation in violation of the established law").

{¶ 28} In the instant case, Hagar's argument concerning the court's denial of his motions to withdraw guilty plea centers around his alleged mental health issues. Earlier in this opinion, we found no merit to Hagar's argument that he was incompetent to stand trial or that his mental health affected these proceedings in any other way. The only evidence in the record concerning Hagar's mental health are two psychiatric evaluations. The first one stated that a clinical opinion on Hagar's mental health was inconclusive because Hagar was malingering, and the second one concluded that, after further inpatient clinical evaluation, Hagar was competent to stand trial.

{¶ 29} Upon review, we find that, because Hagar was represented by counsel, the court could not entertain his pro se motions to withdraw his guilty plea. Additionally, assuming arguendo that the merits of this motion are properly before us, we find that the court acted within its discretion when it denied Hagar's motions. Hagar was represented by competent retained counsel, the court afforded Hagar a full Crim.R. 11 hearing, the court held a hearing on Hagar's pro se motions, and the court gave full and fair consideration to those motions. Accordingly, Hagar's fourth assigned error is overruled.

**Ineffective Assistance of Counsel**

{¶ 30} In his third assigned error, Hagar argues that the court erred by denying his pro se motion to remove counsel, and in his seventh assigned error, Hagar argues that his counsel was ineffective in representing him in the case at hand. Specifically, Hagar argues that his counsel failed to address his mental health issues, misled Hagar as to what would be filed in court, and coerced his plea.

{¶ 31} We find no error in the court's denying Hagar's pro se motion to remove counsel, because Hagar's counsel was retained and of his own choosing. Hagar was free to terminate defense counsel's representation of him and retain new counsel. The court acknowledged this and granted Hagar a one-week continuance to pursue this option. However, Hagar failed to terminate counsel, look for new counsel, or move for a continuance. At his sentencing hearing, Hagar again requested "new" counsel as well as "another [mental health] evaluation from a different doctor * * *." In denying Hagar's request for another attorney, the court

stated as follows: "So, we already talked about that, but I will just refresh your memory, which is to say, you are entitled to hire whomever you like or not, and in this case, you've hired Mr. McGowan to be your counsel, or you could have come in with new counsel or if you wanted to represent yourself, you can do that."

{¶ 32} Upon review, we find no error in the court's denying Hagar's pro se motion to remove counsel. Accordingly, Hagar's third assigned error is overruled.

{¶ 33} To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney=s performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, "a court need not determine whether counsel=s performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 697. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 3743 (1989).

{¶ 34} Hagar alleges that "[c]ounsel's deficient performance in this case was manifest in his failing to address Mr. Hagar's mental health issues prior to entering his plea." Hagar also argues that counsel should have "joined" Hagar's pro se motions to remove counsel and withdraw his plea and that counsel was deficient for not challenging his sentence. Again, the gist of Hagar's argument is that his counsel was ineffective, and as a result Hagar was prejudiced, by failing to consider "the fundamental issue of [Hagar's] competency." However, given the disposition of Hagar's previous assigned errors, we find no merit to this argument.

{¶ 35} There is no evidence in the record that supports Hagar's argument that he is incompetent, and counsel's performance concerning this ultimately unsuccessful issue was not deficient. Furthermore, Hagar has failed to show that the result of these proceedings would have been different but for counsel's performance. Indeed, the trial court found the following at the February 14, 2019 hearing: "[P]rior to a point in time when he did file a motion to have your mental health evaluated, he had no basis to think that you had an issue concerning your competency. And so that's why he did what he did when he did. * * * That's his job."

{¶ 36} Furthermore, given the prohibition of hybrid representation, counsel could not have "joined" Hagar's motion to remove defense counsel. Because defense counsel was retained, it was within Hagar's control to terminate the representation. Accordingly, Hagar's seventh assigned error is overruled.

**Felony Sentencing**

{¶ 37} In his sixth assigned error, Hagar argues that the court "abused its discretion by imposing a prison sentence contrary to R.C. 2929.11 and 2929.12."

{¶ 38} R.C. 2953.08(G)(2) provides, in part, that when reviewing felony sentences, the appellate court's standard is not whether the sentencing court abused its discretion; rather, if this court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under" R.C. Chapter 2929 or (2) "the sentence is otherwise contrary to law," then we may conclude that the court erred in sentencing. *See also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.

{¶ 39} A sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences a defendant within the permissible statutory range." *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10.

{¶ 40} Pursuant to R.C. 2929.11(A), the three overriding purposes of felony sentencing are "to protect the public from future crime by the offender and others," "to punish the offender," and "to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden of state or local government resources." Additionally, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 41} Furthermore, in imposing a felony sentence, "the court shall consider the factors set forth in [R.C. 2929.12(B) and (C)] relating to the seriousness of the conduct [and] the factors provided in [R.C. 2929.12(D) and (E)] relating to the likelihood of the offender's recidivism * * *." R.C. 2929.12. However, this court has held that "[a]lthough the trial court must consider the principles and purposes of sentencing as well as the mitigating factors, the court is not required to use particular language or make specific findings on the record regarding its

consideration of those factors." *State v. Carter*, 8th Dist. Cuyahoga No. 103279, 2016-Ohio-2725, & 15.

{¶ 42} We first note that Hagar is not appealing the trial court's imposition of consecutive sentences in this case.[2] Rather, Hagar argues that his 38-year-and-9-month prison sentence is "absurd" and "clearly inconsistent with felony sentencing guidelines." Specifically, Hagar contends that "the trial court abused its discretion by failing to properly weigh the seriousness and recidivism factors set forth in R.C. 2929.12, as well as failing to properly consider the purposes and principles of the felony sentencing guideline before imposing [the] 38 year sentence."

{¶ 43} Upon review, we find that Hagar's sentence is not contrary to law. The trial court considered the sentencing factors found in R.C. 2929.11 and 2929.12, properly applied postrelease control, and sentenced Hagar to a prison term within the statutory range. The court made the following findings on the record:

> I reviewed your extensive criminal history. It does include a prior criminal history, prior history of violence, a prior history of probation violations, a prior rather lengthy 12-year prison sentence that was aggravated robbery with firearm specifications.
>
> And so reviewing those purposes and principles set forth in felony sentencing and with all these issues in mind, I do not feel that you are amenable to community control sanctions.

---

[2] We note that the Ohio Supreme Court recently held in a plurality opinion, *State v. Gwynne*, Slip Opinion No. 2019-Ohio-4761, ¶ 18, that consecutive felony sentences may not be reviewed under R.C. 2929.11 and 2929.12. Because Hagar is appealing the court's compliance with R.C. 2929.11 and 2929.12, we are confined to reviewing each individual sentence. *Id.* at ¶ 17

* * *

One of the things that I am very mindful of, and the sergeant alluded to it, that there are victims in this case, there are at least nine different victims here, and I believe that they each deserve a sentence that represents the crime that occurred to them.

* * *

[T]hese sentences represent the minimum sentence that you would receive on each individual case were they to come in here.  * * * [A]ny one of those sentences which you pled guilty to, that would be the minimum sentence that you would be entitled to receive.  That is reflective of the level of cooperation that you gave to the State and it's also reflective of your acceptance of responsibility here.

{¶ 44} The court then found that Hagar did not "deserve" the minimum sentence in each count, because of his prior criminal history including probation violations and firearm specifications.  The court noted that probation violation convictions demonstrated that Hagar was likely to reoffend.  Additionally, the court found that

consecutive sentences are necessary to protect the public from future crimes and to punish you and that consecutive sentences are not disproportionate to the seriousness of your conduct and to the danger you pose to the public, again, you have a criminal history of this exact same thing, and we have nine different victims here so your course of conduct and the harm caused by these multiple offenses that you committed were so great or unusual that no single prison term for any of these offenses committed as part of the course of conduct would adequately reflect the seriousness of your conduct.

{¶ 45} Upon review, we find that the record supports the sentencing court's statutory findings.  For example, the court considered Hagar's criminal history, the impact of his crimes on the victims, the seriousness of his conduct, and the likelihood of recidivism.  Furthermore, the court sentenced Hagar to the minimum

individual term for each conviction. For these reasons, we find that the court did not err by imposing a 38-year and nine-month prison sentence. Hagar's sixth assigned error is overruled.

**Cumulative Errors**

{¶ 46} In this eighth and final assigned error, Hagar argues that the cumulative impact of the aforementioned assigned errors amounted to a due process violation. "Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors * * * deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal." *State v. Allen*, 8th Dist. Cuyahoga No. 102385, 2016-Ohio-102, ¶ 21. Upon review, we find that this doctrine does not apply to the instant case, because we do not find multiple instances of harmless error. Hagar's eighth assigned error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
EILEEN A. GALLAGHER, J., CONCUR