[Cite as *State v. Walcot*, 2013-Ohio-4041.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   99477

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ROBERT WALCOT

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-564462

**BEFORE:**  Boyle, P.J., S. Gallagher, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**  September 19, 2013

**ATTORNEY FOR APPELLANT**

Bruce M. Courey
5546 Pearl Road
Parma, Ohio   44129

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Joseph J. Ricotta
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

**{¶1}** Defendant-appellant, Robert Walcot, appeals his conviction, raising a single assignment of error:

> The trial court erred in denying appellant's motion to withdraw his guilty plea prior to sentencing.

**{¶2}** Finding no merit to the appeal, we affirm.

Procedural History and Facts

**{¶3}** In July 2012, Walcot was charged in a 15-count indictment: five counts of rape, violations of R.C. 2907.02(A)(1)(b); four counts of gross sexual imposition, violations of R.C. 2907.05(A)(4); four counts of kidnapping, violations of R.C. 2905.01(A)(4); one count of importuning, a violation of R.C. 2907.07(A); and one count of disseminating matter harmful to juveniles, a violation of R.C. 2907.31(A)(3). The rape and kidnapping counts all carried sexually violent predator specifications, notice of prior conviction, and repeat violent offender specifications. The gross sexual imposition counts carried a sexually violent predator specification. The date of the offenses covered a span of time from July 1, 2002, through July 31, 2005. The victims of the alleged rape, gross sexual imposition, and kidnapping offenses were two of Walcot's stepdaughters, both under the age of 13 at the time of the offenses.

**{¶4}** Walcot initially pleaded not guilty to the charges, and the matter proceeded to a jury trial on November 27, 2012, on the base charges. Walcot elected to have the specifications tried to the bench.

**{¶5}** Prior to the trial commencing, the prosecutor formally placed a plea deal on the record, indicating that the deal would remain open until the first witness was called. Defense counsel also addressed the court, indicating that he discussed the plea deal with Walcot and his family, informed him of the range of the sentence under the plea, and provided a recommendation. The trial court further addressed Walcot and indicated that he "would consider a range in the sentence of 8 to 15 years without any promises as to whether the three-year sentence [that Walcot's] doing now would be concurrent."[1] At that time, Walcot still desired to go ahead with a trial.

**{¶6}** The court commenced the trial, and a jury was selected. Following opening statements, however, Walcot asked to take the plea deal offered by the prosecutor. After fully complying with Crim.R. 11 and advising Walcot of his statutory and constitutional rights, the trial court accepted Walcot's guilty plea to two amended counts of rape, violations of R.C. 2907.02(A)(2), without any specifications attached. The remainder of the counts were nolled.

**{¶7}** After accepting Walcot's plea, the trial court ordered a presentence investigation report on the record, at which time Walcot expressed his desire to withdraw his guilty plea that he had recently entered in the separate firearm case (Case No. CR-554876). Based on Walcot's statement, the trial judge asked Walcot whether he was

---

[1] On November 7, 2012, Walcot was sentenced to three years in prison in Cuyahoga C.P. No. CR-554876 after being convicted of one count of carrying a concealed weapon and one count of having a weapon while under disability.

"contemplating withdrawing" his plea in the rape case. Walcot stated: "No. No, I am not."

**{¶8}** On December 14, 2012, two weeks before the scheduled sentencing date, Walcot filed a pro se motion to withdraw his guilty plea, arguing that he was "not guilty of the allegations that [he] was arraigned on and coerced into pleading guilty." He indicated that the prosecutor, judge, and his own attorney were against him. He expressed his concern that his attorney shared confidential information with the prosecutor from the onset resulting in his re-indictment with additional counts and questioned the integrity of the judge.

**{¶9}** On December 28, 2012, the trial court held a hearing on Walcot's motion to withdraw his guilty plea. Walcot addressed the court, stating that he was "coerced" into entering the plea and under duress. He explained that his trial counsel told him that he would end up going to prison for life because he would lose at trial. Walcot further stated that his defense counsel used Walcot's mother to pressure him to take the plea too and that he did not have enough time to consider the plea. Walcot additionally reiterated the same arguments raised in his motion, i.e., questioning the integrity and competency of his attorney, contending that the state's case was weak, and pleading his innocence. Walcot's criticisms of his defense counsel also included his defense counsel's selection of the jury.

**{¶10}** The trial judge addressed each of Walcot's stated concerns on record.

{¶11} Both the prosecutor and defense counsel confirmed that no privileged confidential information was shared that led to the second indictment with additional charges.   This claim is no longer an issue as Walcot has abandoned it on appeal.

{¶12} With respect to Walcot's duress claim and attack on his attorney, the trial court turned to defense counsel and engaged in the following colloquy:

The Court: So you're giving him your best advice in applying the strategy you felt was best to protect his rights?

[Defense counsel]: Judge, I looked at the indictment.   There was — And I don't have it in front of me.   There [were] 14, 15 counts.   A vast majority of them had life tails if not life without.   Based upon my professional opinion and everything, I thought it was in his best interest to do a plea.   We talked about it. Part of my job is to tell them sometimes things that they don't want to hear. Sometimes when we're in the back the conversation is a little bit raw.   But we've had conversations and I certainly gave him my opinion as to what likely would occur should we go to trial.

And as the court is aware, you know, we were — we picked a jury, did opening statement, and at that point my client pled.   But even during that time I was consistently talking to Mr. Cleary trying to get a better deal for my client. As the court may recall, we were in chambers. We narrowed it down.   With the plea and the three years he was already sentenced to, with the plea bargain, he was looking from 3 to 23 years.   We kept on going away.   And certainly the floor, the bottom of it, is a little bit higher than the minimum, but we were able to back the exposure to 18 years from 23 years.

> We were fighting all along as this process was going on.

**{¶13}** The trial court also heard from Walcot's mother, who stated that she "did not at any time encourage [Robert] to take a plea or go to trial." According to Walcot's mother, she told her son that she would support any decision he made.

**{¶14}** The trial judge then heard from the prosecutor who summarized the evidence of the state's case, which included, among other things: (1) the testimony of the three victims; (2) a journal from one of the victim's recounting the "nightmares" and "demons" caused by Walcot; and (3) a school psychologist to one of the victims. The prosecutor then addressed the court as to the merits of Walcot's arguments, refuting each argument.

**{¶15}** After a full hearing, the trial court denied Walcot's motion, providing detailed reasons as to why he believed that the motion was simply a delay tactic:

> I specifically asked you about these allegations, that I would not accept your plea if you were just going to come back and ask to withdraw it later, because I wanted to make sure that you are doing this freely of your own free will, intelligently, with an understanding of all your rights which I asked you about and that you said yes. You absolutely agreed every time that you were not forced, that you were not threatened, that you did have the opportunity to hear the State's compelling opening statement, that there was an abundance of evidence that points to your being held responsible, that jurors could find you guilty beyond a reasonable doubt of these allegations, and that I took painstaking efforts to give you as much time as necessary to understand those possibilities and to do what you needed to do to understand and have sink in the consequences of your plea versus having a trial.
>
> And [defense counsel] is an outstanding attorney. He was giving you his best advice based on all of his many years of experience, based on the evidence that was provided by the State of Ohio, and you clearly

understood the nature of charges and the effect of a plea and potential consequences, you had a full understanding of your rights. You told me that and I asked you that.

And it just makes me feel like you're not being truthful with me when I ask you specifically do you want to withdraw your plea as I'm taking your plea and you say no, that that was the opportunity for you to say no, I want my trial. You specifically told me the opposite. And so I can only conclude that you didn't like the look of that jury, you didn't like the sound of the opening statements, you knew a witness was coming in and your opportunity to mitigate your consequences was walking up to the stand and it would be forever closed at that point.

It was clear you delayed it to the very end. And now I believe you're just trying to delay the inevitable again. And so I don't see any reasonable reason to allow you to withdraw your plea. It's just not fair to the State of Ohio, it's just not fair to these victims to drag them back down here and begin this process all over again, and that you haven't presented any plausible defense, and that the State had strong evidence in its favor. So I'm going to deny your motion to withdraw the plea at this time.

{¶16} The trial court then proceeded to sentencing, imposing a total of 18 years in prison.

<u>Withdrawal of Guilty Plea</u>

{¶17} In his sole assignment of error, Walcot argues that the trial court erred in denying his motion to withdraw his guilty plea prior to sentencing. He contends that there would have been no prejudice to the state if the trial court would have allowed him to withdraw his plea and that his plea of innocence warranted the granting of his motion.

{¶18} Generally, a motion to withdraw a guilty plea made before sentencing should be freely and liberally granted. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). A defendant does not, however, have an absolute right to withdraw his plea before sentencing. *Id.* at paragraph one of the syllabus. The trial court is required to "conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* Following the hearing, the trial court's decision to grant or deny a motion to withdraw a plea will be upheld absent an abuse of discretion. *Id.* at 527.

> No abuse of discretion is demonstrated where: (1) the accused is represented by highly competent counsel, (2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before entering the plea, (3) after the motion to withdraw is filed the accused is given a complete and impartial hearing on the motion, and (4) the record reveals that the trial court gave full and fair consideration to the plea withdrawal request.

*State v. Tull*, 168 Ohio App.3d 54, 2006-Ohio-3365, 858 N.E.2d 828, ¶ 8 (2d Dist.), citing *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980).

{¶19} In addition to these factors, Ohio courts have recognized a non-exhaustive list of additional factors for the trial court to consider when deciding a presentence motion to withdraw a plea, which include the following: (5) whether the state will be prejudiced by the withdrawal, (6) whether the timing of the motion was reasonable, (7) the reasons for the motion, (8) whether the defendant understood the nature of the charges

and potential sentences, and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *See*, *e.g., State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995); *State v. Moore*, 8th Dist. Cuyahoga No. 98132, 2012-Ohio-5734, ¶ 13.

{¶20} Notably, Walcot does not deny that he was represented by highly competent counsel; indeed, his defense counsel had over 20 years of experience handling criminal cases. Nor does he dispute that he was afforded a full hearing under Crim.R. 11 and a complete and impartial hearing on his motion to withdraw. Instead, he contends that the latter factors (5-9) listed above weigh heavily in favor of granting his presentence motion to withdraw and that these circumstances belie the conclusion that the trial judge gave full and fair consideration to his motion. He argues that the motion should have been granted because (1) there would have been no prejudice to the state, (2) the motion was filed in a reasonable time period, (3) he provided sufficient reasons to support the motion, e.g., that he was innocent and that the plea was induced by pressure from his attorney and mother, and (4) that he "referenced" possible defenses. We find Walcot's arguments, however, unpersuasive.

*Prejudice to the State*

{¶21} Here, Walcot maintains that there would have been no prejudice to the state by the granting of his motion. We disagree. At the time that Walcot asked to take the plea deal, a jury had already been selected and the state had completed its opening statement. Based on Walcot's own statements at his hearing on the motion, he was not

satisfied with the final composition of the jury at trial. To have allowed a subsequent withdrawal of the plea would not only have delayed a resolution and closure of the case for the victims, it would have required the victims to appear a second time for a trial. Further, the granting of Walcot's motion would have improperly awarded Walcot with a second bite at picking a different jury. Under these facts, we find clear prejudice to the state; therefore, this factor does not weigh in Walcot's favor.

*Timeliness of the Motion*

{¶22} While Walcot's motion was arguably timely, i.e., two weeks before sentencing, this alone is insufficient to warrant granting the motion. Indeed, no one factor is conclusive in a trial court's determination on a presentence motion to withdraw a guilty plea. *Fish* at 240. Given the overwhelming factors weighing against the granting of Walcot's motion, we find this factor insignificant.

*Stated Reasons for the Motion To Withdraw*

{¶23} While a claim of innocence is a factor to be weighed in considering a motion to withdraw a plea, it alone does not mandate the granting of such a motion. *See State v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571. Indeed, "[w]hen faced with this claim, 'the trial judge must determine whether the claim of innocence is anything more than the defendant's change of heart about the plea agreement." *Id.* at ¶ 7, quoting *State v. Kramer*, 7th Dist. Mahoning No. 01-C.A.-107, 2002-Ohio-4176, ¶ 58. A mere change of heart regarding a guilty plea and the possible sentence is insufficient

justification for the withdrawal of a guilty plea. *State v. Drake*, 73 Ohio App.3d 640, 645, 598 N.E. 2d 115 (8th Dist.1991).

{¶24} Walcot's coercion claim has no support in the record. Walcot's mother expressly denied ever pressuring Walcot one way or another; she merely expressed her support for whatever decision he chose to make. Likewise, Walcot's attorney expressing his opinion of the strength of the state's case and giving a recommendation as to the plea deal does not amount to coercion; rather, it is merely evidence of his defense counsel doing his job. And here, where it is clear that no threats or false promises were made to induce the plea and that Walcot understood the charges and the potential sentences, we find no merit to Walcot's coercion claim.

*Defense to the Charges*

{¶25} Walcot asserts that he referenced defenses at the hearing on the motion relating to the time frame of the offenses, the motivation of the victims' testimony, and "potential witness testimony that there's no evidence supporting the allegations." The record reveals that Walcot's defense counsel fully explored these potential defenses prior to the taking of any plea. The trial court found these alleged defenses not to be plausible. We cannot say such a determination amounts to an abuse of discretion.

{¶26} Applying the factors relied on by Walcot, we find that they overwhelmingly weighed in favor of the state and that the trial court did, in fact, give full and fair consideration to Walcot's motion. Aside from the lengthy hearing that it conducted, the trial judge specifically pointed to the evidence in the record that weighed strongly in

denying Walcot's motion. We find no abuse of discretion and overrule Walcot's sole assignment of error.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
EILEEN T. GALLAGHER, J., CONCUR