[Cite as *State v. Shaw*, 2016-Ohio-923.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 102802

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# MAURICE SHAW

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-575691-A

**BEFORE:** S. Gallagher, J., Kilbane, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** March 10, 2016

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
55 Public Square - 21st Floor
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Scott Zarzycki
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

**{¶1}** Maurice Shaw appeals from his conviction for involuntary manslaughter, aggravated burglary, and having a weapon while under disability, following a guilty plea. As part of the plea deal, Shaw agreed that the individual felony counts were not allied offenses of similar import and that his sentence of imprisonment would fall between 15 and 23 years. For the following reasons, we affirm.

**{¶2}** The victim was found in his home in June 2012, having been murdered. DNA samples were collected from under the victim's fingernails and from a doorknob in his home. The Cuyahoga County Medical Examiner created a partial DNA profile, but was unable to identify Shaw as the contributor. The samples were then sent to a third party for further analysis. Those results linked Shaw to the crime scene.

**{¶3}** After a series of pretrial motions and hearings, including challenges to the DNA evidence contested at a hearing held pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993),[1] Shaw pleaded guilty on the day his trial was set to commence. Before the sentencing hearing, Shaw filed a pro se motion to withdraw his plea even though he was then represented by counsel. His counsel, three appointed attorneys, also sought to withdraw. Before ruling on either motion, the trial court appointed two more attorneys to represent Shaw. A hearing occurred in February 2015 on both motions. The trial court denied Shaw's

---

[1]At the hearing, Shaw contested the reliability of the scientific method used by the DNA testing agency that led to the agency's conclusion that Shaw could not be excluded as a donor of the DNA samples tested. The trial court overruled Shaw's motion to exclude the DNA results.

motion to withdraw his plea, finding that Shaw's request was based on a mere change of heart, and granted counsel's motion to withdraw. The trial court proceeded to sentencing with Shaw's two newly appointed attorneys as counsel of record. Shaw was sentenced to serve an aggregate term of 17 years in prison.

{¶4} In his first and second assignments of error, Shaw claims that the trial court erred in denying his motion challenging the admissibility of the DNA and the DNA analysis. We summarily overrule both. Shaw pleaded guilty, and therefore, his challenges to the admissibility of the expert evidence have been waived. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 104, citing *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 78; *State v. Spates*, 64 Ohio St.3d 269, 595 N.E.2d 351 (1992), paragraph two of the syllabus; and *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus.

{¶5} In his final assignment of error, Shaw argues that the trial court erred in denying his presentence motion to withdraw his guilty plea. Shaw superficially claims that he was coerced into pleading guilty by his three attorneys and his father. On the day his trial was to commence, Shaw was presented with a plea offer for the first time. According to Shaw, his three attorneys and his father then spent six hours coercing him into pleading guilty. The record does not support Shaw's claim; therefore, we overrule his third and final assignment of error.

{¶6} A motion to withdraw a guilty plea is governed by Crim.R. 32.1, which provides that a "motion to withdraw a plea of guilty or no contest may be made only

before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A defendant does not have an absolute right to withdraw a plea prior to sentencing, and it is within the sound discretion of the trial court to determine what circumstances justify granting such a motion. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). The abuse of discretion standard appellate courts must follow is well stated in *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), paragraph three of the syllabus:

> A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.

One of the factors to be weighed in considering a motion to withdraw a guilty plea is a claim of coercion. "To make this claim, an appellant must submit supporting material containing evidence that the guilty plea was induced by false promises." *State v. Thomas*, 8th Dist. Cuyahoga No. 85294, 2005-Ohio-4145, ¶ 5, citing *State v. Kapper*, 5 Ohio St.3d 36, 448 N.E.2d 823 (1983). A mere change of heart regarding a guilty plea and the possible sentence is insufficient justification for the withdrawal of a guilty plea.

*State v. Drake*, 73 Ohio App.3d 640, 645, 598 N.E.2d 115 (8th Dist.1991); *State v. Lambros*, 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988).

{¶7} In this case, there is no dispute that Shaw was represented by highly competent counsel. In fact, and as found by the trial court, three respected attorneys were appointed to represent Shaw between his July 2013 arraignment and the February 2015 hearing. Further, Shaw was afforded a full hearing pursuant to Crim.R. 11 before he entered his guilty plea, after being afforded time to consider the state's plea offer — an important consideration in light of the fact that the plea offer came on the day Shaw's trial should have commenced. Shaw conceded that he spent six hours with his counsel and his father discussing the plea offer because he had never considered the possibility of accepting a plea deal before trial. Tr. 1429:6-8. After accepting Shaw's guilty plea, the trial court then provided a complete and impartial hearing on the motion to withdraw, including the appointment of two new attorneys. The trial court gave full consideration to Shaw's request.

{¶8} Shaw's only claim in support of withdrawing his plea was that he was coerced into pleading guilty by his counsel and the trial court abused its discretion by not giving greater weight to his self-serving testimony. During the hearing on his motion to withdraw, however, Shaw never testified to having been coerced into pleading guilty, only that he felt pressured because of his attorneys' recommendations. On appeal and during his hearing, Shaw instead relied on blanket assertions of coercion, which are insufficient to satisfy his burden of proof.

**{¶9}** Shaw, contrary to those blanket statements, actually admitted that his father never attempted to coerce him into accepting the plea deal. Tr. 1429:6-13; 1444:4-6; 1454:11-13. At his hearing, Shaw explained that his father merely told him that Shaw had a choice to make. At best, his testimony was limited to "feeling pressured" into pleading guilty on the day of his trial by his father's presence. "Feeling pressured" is not synonymous with "being coerced." *See, e.g.*, *State v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, ¶ 8; *State v. Slater*, 8th Dist. Cuyahoga No. 101358, 2014-Ohio-5552, ¶ 13 (familial pressure to enter plea does not equate to coercion in the absence of evidence that the defendant is incapable of making his own decision).

**{¶10}** Further, Shaw never testified to having been coerced by his trial counsel. He claimed he felt pressured because his three attorneys offered their recommendations based on the state's anticipated evidence and the lengthy sentence faced on the original indictment. Even if we considered his testimony of "feeling pressured" by his situation as being coercion, a "[d]efendant's own self-serving declarations or affidavits alleging a coerced guilty plea are insufficient to rebut the record on review which shows that his plea was voluntary." *Kapper*, 5 Ohio St.3d at 38, 448 N.E.2d 823 (1983). It is notable that Shaw successfully precluded the state from calling his three attorneys as witnesses at the hearing by invoking his attorney-client privilege. We need not comment on this incongruity because it benefitted Shaw. He was able to characterize his conversation with his attorneys in the light most favorable to his own claim, without the fear of contrary evidence being admitted.

{¶11} Upon our review of the record, and considering the evidence as presented at the plea-withdrawal hearing, we find the trial court did not abuse its discretion in denying Shaw's motion to withdraw his guilty plea because the record demonstrates the guilty plea was voluntarily entered, and therefore, Shaw's self-serving declarations are insufficient to rebut the record. The trial court held a full Crim.R. 11 hearing in which competent counsel represented Shaw. There is no claim that any of Shaw's original three attorneys provided ineffective assistance. Shaw denied being threatened or promised anything in exchange for pleading guilty. He also indicated his satisfaction with counsel's advice and assistance, and his understanding of the nature of the offenses and any possible defenses. During the change of plea hearing, Shaw further never expressed or exhibited any indicia of confusion, compromised competency, or deficient understanding of any of the consequences of entering a guilty plea. In fact, at one point Shaw was asked a question by the court, and in response, he asked for a moment to confer with his counsel before responding to the trial court's question. Tr. 1407:1-14. He was fully cognizant of the process and the ability to seek additional information to better inform his decision, and there was no evidence that his three attorneys were unprepared for trial or otherwise rendered unsound advice.

{¶12} It is within the trial court's discretion to determine whether Shaw's arguments in support of his motion were reasonable and legitimate. An appellate panel must defer to the trial court's judgment in evaluating the "good faith, credibility and weight" of Shaw's motivation and assertions in entering and attempting to withdraw his

plea. *See Xie*, 62 Ohio St.3d at 521, 584 N.E.2d 715. Shaw pleaded guilty to receive a far shorter term of imprisonment than he faced should he be found guilty of the counts in their unamended state. He received a favorable deal and failed to provide any evidence that his plea was made unwillingly or without an understanding of the consequences. Shaw further failed to demonstrate that his original counsel coerced him into pleading guilty. More important, his self-serving declarations were not sufficient to rebut the record that his plea was otherwise knowingly, voluntarily, and intelligently entered.

{¶13} Finally, there is no claim of actual innocence in this case and Shaw's claim of being denied access to discovery as a basis to withdraw his guilty plea is irrelevant. Shaw could have addressed the discovery issue with the trial court before pleading guilty. He was present during the *Daubert* hearing and had the opportunity to review every facet of the DNA evidence at that hearing. *Daubert*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. With respect to any insinuation of actual innocence, and although not considered by the trial court, Shaw admitted guilt in his presentence investigation report interview. In addition, the state was prepared to submit the following evidence at trial irrespective of the disputed DNA evidence: (1) Shaw was identified as one of the individuals who sold the deceased victim's stolen items to a purchaser, (2) Shaw's codefendant was prepared to testify to Shaw's involvement in the robbery and homicide, and (3) another independent witness could identify Shaw's involvement in the premeditated planning of the crime. The DNA evidence was the proverbial icing on the cake, placing Shaw at the scene and in contact with the victim.

**{¶14}** For this reason, the trial court's decision denying Shaw's motion to withdraw his guilty plea was not in error. The trial court did not abuse its discretion in finding that Shaw's motion to withdraw the guilty plea was based on a mere change of heart. Shaw's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

TIM McCORMACK, J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS (WITH SEPARATE OPINION)


MARY EILEEN KILBANE, P.J., DISSENTING:

**{¶15}** I respectfully dissent. I would find that the trial court abused its discretion in denying Shaw's presentence motion to withdraw his guilty plea.

**{¶16}** In the instant case, Shaw filed a pro se motion to withdraw his plea less than three weeks after he entered into his plea. His defense counsel also filed a motion to

withdraw Shaw's plea. After a hearing on the matter, the trial court denied Shaw's motion to withdraw, finding that Shaw had a change of heart.

{¶17} While it is within the sound discretion of the trial court to determine what circumstances justify granting a presentence motion to withdraw a guilty plea, such motions generally are freely and liberally granted. *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715 (1992). Moreover, this court has found that coercion by the court, the state, or defense counsel may be a valid basis to withdraw a guilty plea. *State v. Vaughn*, 8th Dist. Cuyahoga No. 87245, 2006-Ohio-6577, ¶ 14, citing *Thomas*, 8th Dist. Cuyahoga No. 85294, 2005-Ohio-4145.

{¶18} At the hearing on Shaw's plea withdrawal, Shaw repeatedly testified he was coerced into taking a plea by his attorneys and father, all while he was in a room for six hours without any food or water. He specifically stated that his intention has always been to go to trial and he advised defense counsel of the same. Shaw testified that he repeatedly advised defense counsel he wanted to go to trial, knowing that his charges carry life sentences. According to Shaw, defense counsel informed him that they did not think he should go to trial based on the plea offered and the potential sentence if he was found guilty at trial. He described defense counsel as giving him "wishy-washy feelings like they [were not] prepared." He felt that defense counsel used his father against him. Counsel brought Shaw's father into the room. Defense counsel wanted Shaw's father to tell him to take the plea. Shaw's father was crying. He told Shaw "son, you know, you've got a choice you have to make." Shaw then looked at one of his attorneys who was shaking his head like "I don't think he should go to trial."

{¶19} Shaw stated that he never had access to the statements or DNA results that would be used as evidence against him. Shaw testified that the *Daubert* hearing "played a big part in [the] case." He asked defense counsel for copies of discovery. Counsel told him he could get copies of everything after the hearing, but he never received the majority of the discovery. He stated that if he had all of the discovery, it would have made a difference in his decision because he would "know everything that is going on in [his] case." He had not seen 500 pages of the 4,000 pages of discovery in his case. Shaw stated he was "still blind as far as like the DNA and the results and like." The

questionable reliability of the DNA tests may have had an impact on the outcome of Shaw's case.

**{¶20}** Shaw testified that at his guilty plea, he felt as though he was under too much pressure and "was ready to get it over with." This was also why he told the trial judge during his plea that he was satisfied with the representation of his counsel. Shaw testified that the plea was his decision. Ultimately, he took the plea deal because he felt that defense counsel was not prepared to go to trial. He described it as a "lose-lose situation" — either take the plea deal or lose at trial. Shaw testified that defense counsel never advised him prior to this point that he was going to lose and should take the plea.

**{¶21}** Even though the trial court held a hearing on Shaw's motion and Shaw was represented by competent counsel, I would find an abuse of discretion in the court's denial of Shaw's plea withdrawal request because Shaw filed his motion shortly after he entered into his plea, he was pressured by defense counsel and his father for approximately six hours, without any food or water, and there is a question to the reliability of the DNA testing used by the state that links Shaw to the crime. Based on these circumstances, the record demonstrates that Shaw's desire to change his plea was more than a mere change of heart. As a result, the court should have permitted Shaw to withdraw his plea.

**{¶22}** Accordingly, I would sustain the third assignment of error, vacate Shaw's conviction and sentence, and remand the matter.