[Cite as *State v. Pames*, 2022-Ohio-616.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,         :

                                 No. 110647

    v.                                 :

CORNELIUS PAMES,                        :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 3, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-18-633079-A, CR-18-633735-A, CR-19-636100-A and
CR-19-643254-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brandon A. Piteo, Assistant Prosecuting Attorney, *for appellee.*

Brian R. McGraw, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Cornelius Pames appeals the trial court's denial of his presentence motion to withdraw his guilty pleas. Pames contends that he should have been permitted to withdraw his guilty pleas because (1) his father and

his lawyers pressured him into changing his pleas and (2) he entered his guilty pleas without "a full understanding of what he was doing."

{¶ 2} For the reasons that follow, we affirm.

**Procedural and Factual Background**

{¶ 3} In 2018 and 2019, Pames was indicted on multiple charges in four separate cases as follows.

{¶ 4} On October 26, 2018, a Cuyahoga County Grand Jury indicted Pames on four counts in Cuyahoga C.P. No. CR-18-633735-A ("633735") — two counts of importuning, one count of gross sexual imposition (with a sexually violent predator specification), one count of kidnapping (with sexual motivation and sexually violent predator specifications) and count of aggravated menacing. The charges related to an incident in September 2018 in which Pames allegedly pushed a 14-year-old victim onto a bed, restrained her and attempted sexual contact with her, pulling at her top and trying to kiss her, before she was able to escape.

{¶ 5} On November 1, 2018, a Cuyahoga County Grand Jury indicted Pames on three counts of escape in Cuyahoga C.P. No. CR-18-633079-A ("633079"). The charges were due to postrelease control violations.

{¶ 6} On January 14, 2019, a Cuyahoga Grand Jury indicted Pames on eleven counts in Cuyahoga C.P. No. CR-19-636100-A ("636100") — two counts of aggravated murder, one count of aggravated burglary, two counts of aggravated robbery, two counts of kidnapping, one count of murder, one count of attempted murder and two counts of felonious assault. The charges arose out of the

September 17, 2018 assault of two elderly sisters, Eusebia Garcia, age 94, and Marina Garcia, age 74, after Pames allegedly broke into the home of a relative with whom they were staying. The sisters were from Honduras and were in the United States visiting family. Eusebia later died from her injuries.

{¶ 7} On August 29, 2019, a Cuyahoga County Grand Jury indicted Pames on eight counts in Cuyahoga C.P. No. CR-19-643254-A ("643254" or the "rape case") — five counts of rape (four of which included sexually violent predator specifications), two counts of kidnapping (with sexual motivation and sexually violent predator specifications) and one count of aggravated burglary. The charges arose out of an incident on October 1, 2018 in which Pames allegedly broke into a residence, orally and vaginally raped an autistic 16-year-old girl multiple times and then bound her to a chair with duct tape. DNA evidence obtained from the duct tape linked Pames to the assault.

{¶ 8} Pames initially pled not guilty to all charges. Significant plea negotiations followed.

**Plea Negotiations**

{¶ 9} During the course of the plea negotiations, the state extended several plea offers to Pames, including a plea offer pursuant to which Pames would have entered guilty pleas to the charges in the rape case only and proceeded to trial on the charges in the other three cases. Pames rejected each of those offers; the rape case proceeded to trial on May 10, 2021.

{¶ 10} On May 12, 2021, during the trial in the rape case, the parties reached a plea agreement. The state set forth the terms of the parties' plea agreement on the record. Pursuant to the plea agreement, Pames agreed to plead guilty to the following charges:

- In 643254, Pames agreed to plead guilty to two counts of rape (one of which was amended to delete the sexually violent predator specification), one amended count of kidnapping (deleting the sexual motivation and sexually violent predator specifications) and one count of aggravated burglary.

- In 636100, Pames agreed to plead guilty to an amended count of involuntary manslaughter, one count of aggravated burglary, two counts of kidnapping and one count of attempted murder.

- In 633735, Pames agreed to plead guilty to an amended count of gross sexual imposition (deleting the sexually violent predator specification) and an amended count of kidnapping (deleting the sexual motivation and sexually violent predator specifications).

- In 633079, Pames agreed to plead guilty to one count of escape.

As part of the plea agreement, the parties further agreed to an agreed sentencing range of 30 to 40 years with no opportunity for judicial release. In exchange for Pames' guilty pleas, the remaining counts would be dismissed.

{¶ 11} Defense counsel confirmed that the state had accurately represented the terms of the plea agreement. Defense counsel further stated that he had reviewed the terms of the plea agreement with Pames, that "[a]t this time it is [Pames'] desire to withdraw his former pleas of not guilty on all four cases and enter pleas of guilt as outlined by the State of Ohio," and that he believed Pames' guilty pleas would be "knowingly, intelligently and voluntarily made" and that no threats

or promises had been made to induce his guilty pleas except "the assumption and * * * the notion that [the] Court will accept the agreed recommended sentence of 30 to 40 years." The trial court indicated that it would accept the recommended sentence and impose a sentence in the range of 30 to 40 years.

{¶ 12} The trial court asked Pames whether the state and defense counsel had accurately described the plea agreement as he understood it. Pames indicated that they had done so. The trial court then proceeded with the plea colloquy.

**The Plea Colloquy**

{¶ 13} In response to the trial judge's preliminary questions, Pames indicated that he was a 27-year-old United States citizen, that he attended high school through 12th grade and that he was then on postrelease control. Pames stated that he was not under the influence of any drugs or alcohol and that he was satisfied with the representation he had received from his counsel. The trial judge advised Pames of his constitutional rights and confirmed that Pames understood the rights he would be waiving by entering his guilty pleas. The trial judge then identified each count to which Pames would be pleading guilty, outlined the potential penalties he faced on each of those counts and confirmed that Pames understood each of the offenses to which he would be pleading guilty and the potential consequences of his guilty pleas. Pames confirmed that no threats or promises had been made to him to induce him to change his pleas other than what had been stated on the record that day. Pames then entered guilty pleas to each of the counts at issue in accordance

with the plea agreement. Pames further confirmed that he was, in fact, guilty of each of the offenses to which he entered guilty pleas.

{¶ 14} The trial court found that Pames had entered his guilty pleas "knowingly and voluntarily, with a full understanding of his rights." The trial court accepted his guilty pleas and found that Pames was, in fact, guilty of the offenses at issue. Upon inquiry by the trial court, the state and defense counsel both confirmed that the trial court had complied with Crim.R. 11. The trial court ordered a presentencing investigation report and mitigation of penalty report and scheduled the sentencing hearing for the following month.

**Motion to Withdraw Guilty Pleas**

{¶ 15} On June 17, 2021, the trial court held the sentencing hearing. At the outset of the hearing, the trial judge indicated that he had received a handwritten "letter" from Pames indicating that he wished to withdraw his guilty pleas (the "letter"). The letter, entitled "Memorandum in Support," stated:

> I, Cornelius Pames, hereby rescind my plea of guilty to the charges against me, and reinstate my plea of not guilty on all charges. I am aware that I had accepted a negotiated plea agreement; however, I was not, at the time, in an appropriate state of mind and could not fully comprehend what I was agreeing to. This was due to receiving news of a dire medical diagnosis for an immediate family member, leaving me severely emotionally distraught.
>
> I offer my sincere apologies to the court, Judge Corrigan, and all other parties involved, including the prosecutor and my own attorney. I, however, cannot, in good faith, accept the negotiated plea agreement at this time.
>
> Please rescind my plea of guilty, and reinstate my plea of not guilty on all charges.

**{¶ 16}** The letter was undated but the envelope was postmarked May 19, 2021. Neither Pames nor his counsel filed a written motion to withdraw his guilty pleas, and Pames' letter was not filed with the trial court.

**{¶ 17}** Upon inquiry by the trial court, Pames stated that he wanted to withdraw his guilty pleas in 63307, 633735 and 636100 — all of the cases except the rape case — and explained his reasons for seeking to withdraw his guilty pleas as follows:

> I didn't understand fully. I had a family crisis. My father told me had cancer, so I was in the middle of dealing with that. I feel like I was forced into taking the plea and I didn't understand a lot of stuff that you were saying then. The only reason I was saying yes is because I was told to say yes when you were reading the charges. I was told to say yes to all of them.

**{¶ 18}** Before deciding to accept the state's plea offer, Pames met with his father. Pames stated that that his father told him, at that time, that he had been diagnosed with cancer and that this affected Pames "[l]ike real bad," "like in a bad way" because "my father is all I really have." Pames told the trial court that he had only ever been willing to plead guilty to the offenses in the rape case and that, notwithstanding his statements to the contrary during the plea colloquy, he did not hear the trial court and did not understand that he was pleading guilty to offenses in all four cases because his mind was focused on his father's condition:

> THE COURT: So what about that information caused you not to understand what was happening in the plea?
>
> THE DEFENDANT: Because my mind was somewhere else.

THE COURT:  You didn't hear what I said when you were responding?

THE DEFENDANT:  No, not really.

THE COURT:  Not really or you didn't hear?

THE DEFENDANT:  I didn't.

THE COURT:  You didn't hear at all?

THE DEFENDANT:  No, Your Honor.

* * *

THE COURT:  All right.  And you do recall that I asked you when you were entering your pleas about whether you were, in fact, guilty; do you recall that?

THE DEFENDANT:  I really didn't hear that part, sir.

THE COURT:  You don't recall?

THE DEFENDANT:  No.

THE COURT:  Or you didn't hear it?

THE DEFENDANT:  Didn't hear it.

THE COURT:  The transcript indicates that you answered yes when I asked you those questions.  How do you explain your answer?

THE DEFENDANT:  I was told when you talking — you ask me a question say yes.  [Defense counsel] told me that, just say yes.

THE COURT: Okay.  Because you didn't answer yes to every question.

THE DEFENDANT: On the charges I did.

{¶ 19}  Pames further claimed that he was "forced" to enter the guilty pleas because his attorneys told him he would receive a life sentence if he rejected the

state's plea offer and his father told him he needed to accept the plea agreement.  As

Pames explained:

>THE COURT:  Right.  You know that you pled in all four cases, right?
>
>THE DEFENDANT:  Yes.  I was only willing to plead to just the  rape case.
>
>THE COURT:  All right.  But you had been telling that to your attorneys for some time, right?
>
>THE DEFENDANT:  Yes. I told them that that day, too.  I told them and my father that same day.
>
>THE COURT:  And then you changed your mind?
>
>THE DEFENDANT:  No.  I was forced to change my mind.
>
>THE COURT:  Someone forced you?
>
>THE DEFENDANT:  Because they said if I didn't cop out to all of them I was going to get a life sentence.
>
>THE COURT:  Okay.  Right.  That was another potential consequence of several of the charges, life without parole.  So that was true.  What else forced you to change your mind and enter a plea?
>
>THE DEFENDANT:  My father talking to me.  He told me that I better take the plea.
>
>THE COURT:  So your father gave you some advice?
>
>THE DEFENDANT:  He told me to take the plea.  It wasn't any advice. He told me to take the plea.
>
>THE COURT:  Okay.  So how did that force you to change your plea?
>
>THE DEFENDANT:  Because any time — The way I was raised by him, anytime he say something it goes.

{¶ 20} When asked by the trial court whether she had any indication that Pames "had difficulty understanding the process of the [change-of-plea] hearing," defense counsel stated that although she was "not able to speak" to Pames' "mindset" or "mental capacity" at that time, she had had multiple conversations with Pames about what a plea would entail and the rights he would be giving up by entering into a plea agreement. She stated that she not aware that Pames had any difficulty understanding what was occurring during the change-of-plea hearing or that he wished to withdraw his guilty pleas until she received a copy of the letter Pames sent the trial judge. Defense counsel stated that although she was in the room when Pames spoke with his father, she did not hear everything they said. She indicated, however, that she did not hear what would lead her to believe that Pames "wasn't totally understanding" the terms of the state's plea offer.

{¶ 21} The trial court asked Pames whether he wished to make an oral motion to withdraw his guilty pleas. Pames indicated that he did:

THE COURT: Mr. Pames, you wrote me a letter. You didn't file a motion. Your attorneys have not filed a motion. You wish to file a motion with the Court?

THE DEFENDANT: Yes, sir.

THE COURT: To do what?

THE DEFENDANT: To withdraw my guilty plea.

THE COURT: Which pleas?

THE DEFENDANT: The murder. I was willing to cop out to the rape.

THE COURT: Okay. So you fully understood everything we talked about with the rape case when you pled?

THE DEFENDANT: Yeah.

{¶ 22} Pames' attorneys did not join in his oral motion. Although noting that hybrid representation was not permitted, "out of an abundance of caution to give [Pames] every opportunity to explore, this issue," the trial court indicated that it would consider Pames' oral motion.

{¶ 23} The state urged the trial court to deny Pames' motion on the grounds that "[n]othing about [Pames'] behavior" at the change-of-plea hearing indicated emotional distress, a lack of understanding or any other issue on the part of Pames. The state noted that the trial court had inquired "several times" as to whether Pames understood "the nature of the plea as well as all of the rights that he was giving up to enter into that plea agreement." The state further noted that it had extended an alternate plea offer to Pames, pursuant to which Pames would enter guilty pleas to the charges in the rape case only and to proceed to trial in the other three cases, but that Pames had rejected that offer. The state also noted that trial had begun in the rape case, that significant progress had been made in selecting a jury before Pames decided to accept the state's plea offer and that "significant arrangements" had been made to enable the victims' family members to participate in the sentencing hearing scheduled for that day.

**{¶ 24}** After confirming that Pames and defense counsel had nothing more to "tell the [c]ourt" regarding the issue, the trial court denied Pames' motion, explaining its reasoning as follows:

> So I have considered this information carefully and also considering all the information I have with respect to this defendant from psychological reports and my very vivid recollection of two days of trial, the opportunity the State gave for several different pleas, at least two, and the efforts made to make sure that his rights were preserved.
>
> It doesn't make sense to me at this point that you would understand one plea but somehow not understand his rights or be forced in the other cases. It just doesn't add up, doesn't make sense. Those are all discussed at the same hearing.
>
> He has two extremely qualified, seasoned attorneys advising him; that he's been advised for months with respect to all the issues in these cases; and that his specific answers to my questions indicated that he did knowingly, voluntarily, and with a full understanding of all his rights entered these guilty pleas.
>
> I'd also note that there is a significant prejudice to the State of Ohio in the middle of the trial when he made these pleas. A very attentive, engaged jury panel that certainly had an [e]ffect on whether or not Mr. Pames should accept responsibility. I believe that definitely that voir dire was a motivating factor in Mr. Pames finally accepting responsibility in all his cases.
>
> I'm going to deny his oral pro se motion at this time.

**{¶ 25}** The trial court then proceeded with the sentencing hearing. After hearing from Pames, defense counsel, the state, and family members of the victims, reviewing the presentence investigation report, psychological evaluations of Pames and various victim impact statements and considering "the principles and purposes of felony sentencing [and] all the appropriate recidivism and serious factors as

required by law," the trial court sentenced Pames to a 40-year aggregate prison sentence with no consideration of judicial release, as follows.

- In 643254, the trial court sentenced Pames to 10 years on each of the rape, kidnapping and aggravated burglary counts to be served concurrently with each other but consecutively to the sentences imposed in 636100 and 633735 and concurrently with the sentence imposed in 633079.

- In 636100, the trial court found that one of the kidnapping counts merged with the involuntary manslaughter count and that the other kidnapping count merged with the attempted murder count. The state elected to have Pames sentenced on the involuntary manslaughter and attempted murder counts. The trial court sentenced Pames to 10 years each on the involuntary manslaughter, aggravated burglary and attempted murder counts, with the sentence on the aggravated burglary count to be served concurrently with the sentences on the other counts and the sentences on the involuntary manslaughter and attempted murder counts to be served consecutively to each other and consecutively to the sentences imposed in 643254 and 633735 but concurrently with the sentence imposed in 633079.

- In 633735, the trial court found that the gross sexual imposition count merged with the kidnapping count, and the state elected to have Pames sentenced on the kidnapping count. The trial court sentenced Pames to 10 years on the kidnapping count to be served consecutively to the sentences imposed in 643254 and 636100 but concurrently with the sentence imposed in 633079.

- In 633079, the trial court sentenced Pames to 18 months on the escape count to be served concurrently with the sentences imposed in the other cases.

Pames was also sentenced to five years of mandatory postrelease control and designated a Tier III sex offender.

{¶ 26} Pames appealed, raising the following sole assignment of error for review:

The trial court abused its discretion in denying Pames' request to withdraw his guilty pleas prior to sentencing.

**Law and Analysis**

{¶ 27} We review a trial court's ruling on a presentence motion to withdraw a guilty plea for an abuse of discretion. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Unless it is shown that the trial court acted unreasonably, arbitrarily or unconscionably in denying a defendant's motion to withdraw a plea, there is no abuse of discretion and the trial court's decision must be affirmed. *See, e.g., State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 36, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), and *Xie* at 527.

{¶ 28} In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *Xie* at 527. However, even before the trial court imposes a sentence, a defendant does not have an "absolute right" to withdraw a plea. *Id.* at paragraph one of the syllabus. Before ruling on a presentence motion to withdraw a plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawal of the plea. *Id.* At the hearing, the defendant is entitled to "'full and fair consideration'" of his or her motion. *State v. Hines*, 8th Dist. Cuyahoga No. 108326, 2020-Ohio-663, ¶ 8, quoting *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980). It is "'within the sound discretion of the trial court'" to determine whether circumstances exist that warrant withdrawal of the guilty plea. *Xie* at 526, quoting *Barker v. United States*,

579 F.2d 1219, 1223 (10th Cir.1978). A mere "change of heart" regarding a guilty plea is not enough to justify withdrawal of a guilty plea. *See, e.g., Musleh* at ¶ 35; *State v. Shaw*, 8th Dist. Cuyahoga No. 102802, 2016-Ohio-923, ¶ 6.

{¶ 29} This court has identified a number of nonexhaustive factors for trial courts to consider when deciding a presentence motion to withdraw a plea. *See, e.g., State v. Moore*, 8th Dist. Cuyahoga Nos. 108962, 108963 and 108964, 2020-Ohio-3459, ¶ 56; *State v. Walcot*, 8th Dist. Cuyahoga No. 99477, 2013-Ohio-4041, ¶ 19. These factors include: (1) whether the motion was made in a reasonable time; (2) whether the motion states specific reasons for withdrawal; (3) whether the defendant understood the nature of the charges and the possible penalties; (4) whether the defendant was perhaps not guilty or had a complete defense and (5) whether the state would be prejudiced by the withdrawal of the plea. *See, e.g., Moore* at ¶ 56; *Hines* at ¶ 10; *State v. Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio-2269, ¶ 19.

{¶ 30} As a general matter, a trial court does not abuse its discretion in denying a presentence motion to withdraw a guilty plea where (1) the defendant was represented by highly competent counsel, (2) the defendant was afforded a full hearing, pursuant to Crim.R. 11, before he or she entered the plea, (3) the defendant was given a complete and impartial hearing on the motion to withdraw the guilty plea and (4) the record reveals that the court gave full and fair consideration to the plea withdrawal request. *Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863, at paragraph three of the syllabus; *see also Moore* at ¶ 57; *State v. Armstrong*, 8th Dist.

Cuyahoga No. 103088, 2016-Ohio-2627, ¶ 17. On the record before us, we cannot say that the trial court abused its discretion in denying Pames' motion to withdraw his guilty pleas.

{¶ 31} Pames contends that the trial court abused its discretion in denying his presentence motion to withdraw his guilty pleas because (1) he had "explained, in writing, and before he was sentenced" that he was "not fully engaged when he pled guilty" and that he had been "forced" to plead guilty through "a combination of pressure from his father and [his] lawyers," (2) his "mouthing of 'yes' and 'guilty' did not represent his state of mind at the time" and (3) the trial court's questioning of Pames at the sentencing hearing "did not, in any way, disturb his representation that his guilty pleas were not made with a full understanding of what he was doing."

{¶ 32} In this case, Pames sought to withdraw his guilty pleas within a week of entering them. However, he did not file a motion and his attorneys did not join in his oral motion to withdraw his guilty pleas. For that reason alone, the trial court could have properly denied Pames' request. *See, e.g., State v. Williams*, 8th Dist. Cuyahoga No. 109972, 2021-Ohio-2032, ¶ 15 ("It is well established that '[a] criminal defendant has the right to counsel or the right to act pro se; however, a defendant does not have the right to both, simultaneously, or "hybrid representation."' * * * Where a represented defendant makes an oral pro se motion to withdraw his guilty plea, the trial court can refuse to entertain such motion."), quoting *State v. Powell*, 8th Dist. Cuyahoga No. 107006, 2019-Ohio-346, ¶ 16; *see*

*also State v. Mongo*, 8th Dist. Cuyahoga No. 100926, 2015-Ohio-1139, ¶ 13-14, 17-18; *State v. Hill*, 8th Dist. Cuyahoga No. 107290, 2019-Ohio-1647, ¶ 11-14.

{¶ 33} Nevertheless, the trial court held a hearing on Pames' oral motion to withdraw his guilty pleas. Pames does not claim that the hearing was incomplete or impartial. Likewise, there is no dispute that Pames was represented throughout the proceedings by two highly competent, "extremely qualified, seasoned" attorneys and that he was afforded a full hearing, in compliance with Crim.R. 11, before he entered his guilty pleas. The record reflects that the trial court gave full and fair consideration to Pames' request to withdraw his guilty pleas.

{¶ 34} Pames' claim that he "didn't hear" the trial court during the plea colloquy or did not understand that he was pleading guilty to any offenses — other than those in the rape case — is not credible and is contradicted by the record. The trial judge who ruled on Pames' motion was present for, and actively engaged with Pames throughout, the change-of-plea hearing. Pames pled guilty to a total of 12 counts — four counts in the rape case and eight counts in the other three cases. At the outset of the plea hearing, the state outlined the parties' plea agreement in detail, identifying each of the 12 counts to which Pames would be pleading guilty. Defense counsel confirmed that the state had accurately described the plea agreement and Pames also expressly acknowledged that the state and defense counsel had accurately described the plea agreement as he understood it. Before beginning the plea colloquy, the trial judge told Pames, "I'm going to ask you some questions for the record." He instructed Pames, "[i]f there's anything that I ask that you don't

understand, let me know and I'll explain it to you." Although Pames claimed that he "didn't hear" or understand anything the trial judge said — except with respect to the rape case — the transcript reveals that Pames provided intelligent and appropriate responses to each and every question posed by the trial judge during the change-of-plea hearing. During the plea colloquy, the trial court carefully described each offense to which Pames would be pleading guilty, including the nature of the offense, the date of the offense, the victim of the offense and the potential penalty associated with the offense. Pames indicated that he understood each offense to which he would be pleading guilty and that he was, in fact, guilty of each such offense. It strains credulity to believe that Pames heard and understood everything with respect to the rape case but was too distracted during the change-of-plea hearing to hear and understand the information that was provided with respect to his guilty pleas in the other cases.

{¶ 35} When the trial court asked Pames at the sentencing hearing what questions he had about the guilty pleas, i.e., what did he not understand about the guilty pleas, Pames did not provide a cogent response:

THE COURT: What did you not understand?

THE DEFENDANT: A lot of stuff like stuff you were reading about appeals and all that stuff.

THE COURT: Appeals?

THE DEFENDANT: Of all the stuff you were reading.

THE COURT: You remember me talking about appeals?

THE DEFENDANT:  Yes.  You said that I wouldn't be allowed to appeal. That's the only part I understood.

* * *

THE COURT:  Okay.  So what questions do you have about the plea?

THE DEFENDANT:  Like just when I told my father and I've been telling him and telling them only terms I was ready — or willing to cop out to was the rape charge.  Both my attorneys knew that and my family knew.  I even said it on the phone I was agreeing to cop out to the rape and that was it.

{¶ 36} Likewise, Pames' claim that he was "forced" to enter guilty pleas in 633079, 633735 and 636100 is not supported by the record.

{¶ 37} The uncertainty associated with going to trial and the fear of being found guilty of, and sentenced on, more offenses (or more serious offenses) than the defendant would have been convicted of had he or she accepted a plea agreement is a motivation that underlies virtually all guilty pleas.  The fact that a defendant may have felt "pressured" to enter a guilty plea is not a sufficient basis upon which to withdraw a plea in the absence of evidence of coercion.  *See, e.g., Moore*, 2020-Ohio-3459, at ¶ 60; *Shaw*, 2016-Ohio-923, at ¶ 6-9; *see also Musleh*, 2017-Ohio-8166, at ¶ 42-44 (defendant's claim that he had been "confused, depressed, and worried about his family" when he entered his no contest plea was not sufficient to warrant withdrawal of his plea).  To show coercion in the entry of a guilty plea, "'an appellant must submit supporting material containing evidence that the guilty plea was induced by false promises.'"  *Shaw* at ¶ 6, quoting *State v. Thomas*, 8th Dist.

Cuyahoga No. 85294, 2005-Ohio-4145, ¶ 5, citing *State v. Kapper*, 5 Ohio St.3d 36, 448 N.E.2d 823 (1983).

{¶ 38} Defense counsel's expression of opinion regarding the strength of the state's case, his or her explanation of the worst-case scenario or other possible sentencing scenarios (including the potential that the defendant could receive multiple life sentences) if the defendant were to go to trial and lose, and defense counsel's recommendation regarding whether to accept a plea deal does not amount to coercion or duress sufficient to justify withdrawal of a guilty plea; "it is merely evidence of * * * defense counsel doing his job." *Walcot*, 2013-Ohio-4041, at ¶ 24; *see also State v. Martre*, 3d Dist. Allen No. 1-18-61, 2019-Ohio-2072, ¶ 15 ("simply stating the projected outcome of a trial based upon the evidence * * * is not necessarily duress").

{¶ 39} Further, the record contains nothing to support Pames' assertion that defense counsel "pressured" him to accept the state's plea offer. To the contrary, the record shows that Pames freely rejected other plea offers the state had made. Pames has not claimed that he was threatened in any way by defense counsel, that he was promised anything he did not receive in exchange for his guilty pleas by defense counsel or that defense counsel (or anyone else) provided him with incomplete or inaccurate information with regard to the offenses with which he was charged, the sentences for those offenses or the evidence in support of the state's case against him. At the change-of-plea hearing, Pames stated that he was satisfied with the representation he had received from his counsel. Pames does not claim that he did

not commit the offenses to which he pled guilty or that he had any potential defenses. And although Pames asserts that any prejudice to the state as a result of the withdrawal of his guilty pleas would be "limited," i.e., that "asking a prosecutor to 'resurrect' a file and move it from the 'pled guilty' drawer to the 'get ready for trial drawer' is an inconvenience (and upsetting) but it doesn't rise to the level of prejudice," the record reflects otherwise. The trial court specifically found, as detailed above, that there was "a significant prejudice" to the state, i.e., that "[a] very attentive, engaged jury panel" had been seated "that certainly had an [e]ffect on whether or not Mr. Pames should accept responsibility." Nothing in the record contradicts that finding.

{¶ 40} Likewise, Pames' statement that his father told him to "take the plea" is not sufficient evidence of "coercion" to warrant withdrawal of Pames' guilty pleas. *See, e.g., Shaw*, 2016-Ohio-923, at ¶ 9 ("'feeling pressured' into pleading guilty on the day of his trial by his father's presence" was "not synonymous with 'being coerced'"); *State v. Slater*, 8th Dist. Cuyahoga No. 101358, 2014-Ohio-5552, ¶ 13 ("family pressure" to enter guilty plea "'does not necessarily show coercion'" in the absence of evidence that the defendant was competent or incapable of making his own decision), quoting *State v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, ¶ 8; *State v. Christian*, 7th Dist. Mahoning No. 16 MA 0148, 2017-Ohio-9373, ¶ 37 (noting that "family pressure is generally insufficient to show coercion, particularly when the defendant was capable of making his own decision" and that "[n]o case can be found where a plea was permitted to be withdrawn due to family

pressure"); *State v. Mitchell*, 11th Dist. Portage No. 94-P-0070, 1995 Ohio App. LEXIS 2803, 5 (June 30, 1995) (although familial "advice" or "pressure" may be probative of a defendant's motivation for entering guilty pleas, it does not constitute coercion, duress or involuntariness); *cf. State v. Sidney,* 8th Dist. Cuyahoga No. 70686, 1997 Ohio App. LEXIS 2914, 2, 7-8 (July 3, 1997) (concluding that trial court did not abuse its discretion in denying defendant's presentence motion to withdraw guilty plea and that defendant merely had a "change of heart" regarding his guilty plea where defendant claimed that that he was "not thinking clearly" when he entered guilty pleas because he was "under tremendous stress" due to wife's upcoming surgery for breast cancer but made no mention of his wife's surgery or any stress he was experiencing at change-of-plea hearing); *State v. Vales*, 8th Dist. Cuyahoga Nos. 102014 and 102015, 2015-Ohio-3874, ¶ 13-14, 30-31 (trial court did not abuse its discretion in denying defendant's presentence motion to withdraw his guilty pleas where defendant claimed that he "felt great pressure in making [his decision to plead guilty] because of the possible life sentence, being on the brink of trial, and considering his prior conviction versus the credibility of the alleged victim in the case, and the age of the case").

{¶ 41} At the change-of-plea hearing, Pames made no mention of his father's health condition or any related stress and repeatedly acknowledged that no threats or promises had been made to him to induce him to change his pleas other than what had been stated on the record that day.  Pames has provided no specifics on how his father allegedly coerced him into entering his guilty pleas other than to state

"anytime he say something it goes." However, at the time of his guilty pleas, Pames was 27 years old. There is nothing in the record to suggest that Pames was not competent and capable of making his own choices.

{¶ 42} It was within the trial court's province to determine whether Pames' arguments in support of his motion to withdraw his guilty pleas were reasonable and legitimate. We defer to the trial court's judgment in evaluating the "good faith, credibility and weight" of Pames' assertions in entering and attempting to withdraw his guilty pleas. *See, e.g., Westley* at ¶ 12, citing *Xie*, 62 Ohio St.3d at 525, 584 N.E.2d 715. Pames has not shown that his guilty pleas were entered unwillingly, were entered without an understanding of the consequences or that false promises were made to him to induce his guilty pleas. Where, as here, a defendant offers no evidence, "other than mere persuasion and convincing by family and counsel" that his guilty pleas were coerced, a trial court does not abuse its discretion in denying a defendant's motion to withdraw his guilty pleas. *See, e.g., Westley* at ¶ 12-13.

{¶ 43} Based on the record before us, we cannot say that the trial court abused its discretion in denying Pames' oral motion to withdraw his guilty pleas. Pames' assignment of error is overruled.

{¶ 44} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MARY J. BOYLE, J., CONCUR