[Cite as *State v. Clifton*, 2022-Ohio-3814.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                                     :

    Plaintiff-Appellee,                    :

                                     No. 110984

    v.                                          :

OMARI CLIFTON,                                    :

    Defendant-Appellant.                 :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** October 27, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-647822-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Poula E. Hanna, Assistant Prosecuting Attorney, *for appellee*.

Law Office of Timothy Farrell Sweeney and Timothy F. Sweeney, *for appellant*.

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Omari Clifton appeals the denial of his motions to withdraw his guilty plea under Crim.R. 32.1. For the reasons that follow, we affirm

the convictions and remand the matter with instructions for the trial court to correct certain clerical errors in its journal entries.

## I.    Factual Background and Procedural History

### A. The Indictment and Arraignment

{¶ 2} On February 20, 2020, a Cuyahoga County Grand Jury returned an indictment charging Omari Clifton with 14 drug, gun and child-endangering crimes. The grand jury alleged that Clifton (1) trafficked in and possessed heroin, fentanyl, cocaine and 4-anilino-N-phenethylpiperidine ("4-ANPP"); (2) possessed various criminal tools, including digital scales, cell phones, cars and guns; (3) possessed two firearms while under a disability; (4) trafficked in, or illegally used, food stamps and (5) endangered three minors.[1]  Each of the trafficking counts carried a one-year

---

[1] Count 1: Trafficking between 10 and 50 grams of heroin or a substance containing heroin, in violation of R.C. 2925.03(A)(2).  This is a felony of the first degree.

Count 2: Possession of between 10 and 50 grams of heroin or a substance containing heroin, in violation of R.C. 2925.11(A).  This is a felony of the second degree.

Count 3: Trafficking between 500 and 1,000 doses or between 50 and 100 grams of fentanyl or a substance containing fentanyl, in violation of R.C. 2925.03(A)(2).  This is a felony of the first degree.

Count 4: Possession of between 500 and 1,000 doses or between 50 and 100 grams of a fentanyl-related compound or a substance containing a fentanyl-related compound in violation of R.C. 2925.03(A)(2).  This is a felony of the first degree.

Count 5: Trafficking between the bulk amount and five times the bulk amount of 4-ANPP, in violation of R.C. 2925.03(A)(2).  This is a felony of the second degree.

Count 6: Possession of between the bulk amount and five times the bulk amount of 4-ANPP, in violation of R.C. 2925.11(A).  This is a felony of the third degree.

Count 7: Trafficking between 20 and 27 grams of cocaine, having previously pleaded guilty or been convicted of two or more drug-abuse offenses, in violation of R.C. 2925.03(A)(2).  This is a felony of the first degree.

Count 8: Possession of between 20 and 27 grams of cocaine, in violation of R.C. 2925.11(A).  This is a felony of the second degree.

firearm specification and a specification that Clifton committed the offenses within 100 feet of or within view of a juvenile. Clifton also asked the court to order his defense counsel to file a brief in support of the motion to suppress.

{¶ 3} The grand jury also indicted Clifton's then-girlfriend with possessing criminal tools, having weapons under disability, endangering children, permitting drug abuse and trafficking in or illegal use of food stamps.

{¶ 4} The indictment sought the forfeiture of two firearms, $11,811 in U.S. currency, digital scales, cell phones and two cars.

{¶ 5} The state outlined in its briefing in the trial court that these charges stemmed from an investigation in which a police informant executed "controlled buys" from Clifton in Cleveland, which revealed positive results for various controlled substances. The state described that the police obtained a search warrant from a judge on the Cuyahoga County Court of Common Pleas for Clifton's home in Garfield Heights, Ohio, and that Cleveland police requested the assistance of a Garfield Heights police officer to execute the search warrant but no Garfield Heights officer was able to attend the search "due to call volume." The Cleveland police

---

Count 9: Possession of criminal tools, in violation of R.C. 2923.24(A). This is a felony of the fifth degree.

Count 10: Having weapons while under disability, in violation of R.C. 2923.13(A)(3). This is a felony of the third degree.

Count 11: Trafficking in or illegal use of food stamps, in violation of R.C. 2913.46(B). This is a felony of the fifth degree.

Counts 12–14: Endangering children, in violation of R.C. 2919.22(A). This is a misdemeanor of the first degree.

nevertheless executed the warrant, finding Clifton, his girlfriend and their three children in the home along with drugs, loaded guns, scales, cell phones, food-stamp cards and cash.

{¶ 6} Clifton was arraigned on the indictment on February 27, 2020, at which time the court declared him indigent and appointed an attorney to represent him. Clifton subsequently retained an attorney, who entered his appearance on March 16, 2020.

### B. The Suppression and Speedy Trial Briefing

{¶ 7} On June 5, 2020, Clifton filed a pro se motion to suppress evidence, arguing — among other things — that the Cleveland police did not have jurisdiction to execute the search warrant at his home in Garfield Heights and that no officer from either the Garfield Heights Police Department or the Cuyahoga County Sheriff's Department was present during the search.

{¶ 8} On July 15, 2020, Clifton filed a pro se motion "to proceed to trial as soon as possible without any further delays." In the motion, Clifton wrote that he "will not accept any type of plea agreement whatsoever" and was "ready for trial." On the same day, Clifton filed a pro se motion "to disqualify counsel," arguing that his retained counsel had not filed a motion to suppress or a motion regarding preindictment delay, which Clifton said he had expected.

{¶ 9} On September 28, 2020, Clifton filed a pro se motion to dismiss the indictment for the reasons stated in his motion to suppress.

{¶ 10} On October 16, 2020, Clifton's retained counsel filed a motion to withdraw, citing differing opinions about case strategy, Clifton's complaints about counsel's representation and Clifton's numerous pro se motions.

{¶ 11} On November 13, 2020, Clifton filed a second pro se motion "to proceed to trial without any further delay." In the motion, Clifton reiterated that he would not accept a plea agreement and wanted a suppression hearing and a trial. He also complained of the pretrial delay in the case.

{¶ 12} The state did not file a written opposition to any of Clifton's pro se motions. On November 20, 2020, the trial court granted retained counsel's motion to withdraw and appointed new counsel to represent Clifton. The case was continued several times to allow new counsel to obtain and review discovery and to prepare a motion to suppress.

{¶ 13} In February 2021, Clifton — through his appointed counsel — filed a motion to suppress evidence. Clifton again argued that Cleveland police executed the search warrant in this case outside of their territorial jurisdiction and without the assistance of any officers with jurisdiction in Garfield Heights; he argued that these facts require suppression of all evidence.

{¶ 14} On April 8, 2021, the state filed a brief in opposition to the suppression motion.

## C. The Plea Negotiations

{¶ 15} On April 15, 2021, the parties came before the trial court for purposes of arguing the suppression motion. At the start of the hearing, the prosecutor

informed the court that the state had offered Clifton a plea agreement. The state said that if Clifton rejected the offer, the state would withdraw it after the suppression hearing and would not offer Clifton any further plea agreements. Defense counsel then requested to confer with Clifton about the matter.

{¶ 16} After what defense counsel characterized as "extensive conversation" between himself and Clifton, defense counsel reported that the parties had reached a resolution of the case. The state noted that it had exchanged full discovery with the defense and "pre-tr[ied]" the case with defense counsel. The state then set forth the terms of the parties' plea agreement on the record. As the state described, Clifton agreed to the following terms:

> The state would amend Count 1 to charge attempted trafficking in heroin, a felony of the third degree.
>
> The state would reduce the charged drug quantity in Count 3 (trafficking in fentanyl), to make this a felony of the third degree with a presumption in favor of a prison sentence of between 9 and 36 months.
>
> The state would amend Count 7 to charge attempted trafficking in cocaine, a felony of the third degree.
>
> The state would remove the firearms and juvenile specifications from Counts 1, 3 and 7.[2]
>
> The state would move for a nolle prosequi on Counts 2, 4–6, 8 and 13–14.

---

[2] The state did not identify that it was also removing the firearms specification from Count 3, but the context of the hearing makes clear that the state intended to do so. For example, the state indicated that Count 3 after amendment would carry a presumption of a prison sentence of 9 – 36 months. Moreover, the court did not ask Clifton for his plea to the firearms specification, and neither the state nor defense counsel identified that as a mistake. Moreover, the court's journal entry indicates that the firearm specification as to Count 3 was dismissed.

In exchange for these amendments, Clifton would withdraw his motion to suppress and plead guilty to the amended Counts 1, 3 and 7. He would also plead guilty to Counts 9–12 of the indictment as charged. He would also agree to forfeit all of the items listed in the indictment's forfeiture specifications.

{¶ 17} Defense counsel confirmed that it was his understanding that Clifton would withdraw his formerly entered not guilty plea and enter a plea of guilty in accordance with the terms of the agreement as described by the state. Counsel further informed the court that he believed that "this plea is knowingly, intelligently, and voluntarily made."

{¶ 18} The trial court then commenced a plea colloquy.

**D. The Plea Colloquy**

{¶ 19} In response to the trial court's preliminary questions, Clifton informed the court that he was a 38-year-old U.S. citizen who had obtained a certificate for passing the General Educational Development (GED) test. He said he could read and write. He denied being under the influence of any drugs, alcohol or medication that would influence or adversely affect his ability to understand the proceedings or to enter into a plea. He said he understood what was happening at the hearing.

{¶ 20} Clifton said he was on a community-control sanction, probation, postrelease control or parole as a result of another case. The court informed Clifton that he may face additional penalties in that other case if he pleads guilty in this case, including prison time that could run consecutively to any prison time he may receive in this case. Clifton said that he understood.

{¶ 21} Clifton reported that no threat or promise had been made to him to induce his plea other than what had been stated on the record during the hearing. He said he was satisfied with his counsel.

{¶ 22} The court explained Clifton's constitutional trial rights, the state's burden of proof at trial and the presumption of innocence that Clifton would be afforded at a trial. The court explained that by entering a plea of guilty, Clifton would be giving up those rights and admitting to his full guilt and to the truth of the relevant facts. Clifton indicated that he understood what the court had explained.

{¶ 23} The trial court identified each count to which Clifton would be pleading guilty — those being Counts 1 (as amended), 3 (as amended), 7 (as amended), 9, 10, 11 and 12. The court explained the potential penalties for each count to which Clifton would be pleading guilty. The court then explained the potential penalties for the first-degree misdemeanor count of endangering children (Count 12). The court further explained the potential term of postrelease control and the potential consequences if Clifton failed to meet the terms and conditions of that postrelease control.

{¶ 24} Both the state and Clifton's counsel agreed that the trial court's colloquy had complied with Crim.R. 11.

{¶ 25} Clifton then entered — and the court accepted — guilty pleas to Counts 1 (as amended), 3 (as amended), 7 (as amended), 9, 10, 11 and 12. Clifton further pleaded guilty to the forfeiture specifications. The court dismissed the remaining counts.

{¶ 26} The trial court ordered a presentence-investigation report and set the case for sentencing.

{¶ 27} The trial court's journal entry accurately sets forth the amendments to the indictment and Clifton's pleas at the hearing, except in two respects. First, the journal entry indicates that the amended Count 3 remained a felony of the first degree even after the amendment (when the hearing clearly indicates that the amendment made Count 3 a felony of the third degree).

{¶ 28} The court corrected this error through a nunc pro tunc entry on August 24, 2021, noting that the "defendant plead [sic] to an amended Count 3, reducing the amount from more than 5 grams but less than 10 grams, [a] felony of the 3rd degree not a felony of the 1st degree[;] firearm and juvenile specifications deleted also."

{¶ 29} Second, the journal entry issues a nolle prosequi (that the state did not request) to Count 9 (to which Clifton had pleaded guilty). This error was never corrected, and the state did not raise this error on appeal.

**E. The First Pro Se Motion to Withdraw the Guilty Plea**

{¶ 30} Soon after pleading guilty, Clifton's codefendant — and the mother of his children — tragically passed away.[3]

---

[3] Clifton's appeal brief states that she passed away on April 27, 2021. But documents in the appellate record from the Cuyahoga County Court of Common Pleas Probation Department document that she passed away on April 23, 2021; this latter date is consistent with Clifton's statement to the trial court that he was under a lot of pressure when he filed the motion on April 23 as a result of her death.

{¶ 31} On April 23, 2021, Clifton filed a pro se motion to withdraw his guilty plea. Clifton's motion was based on his argument that the Cleveland police improperly executed and returned the search warrant and lacked the authority to arrest him.

{¶ 32} On May 20, 2021 — the date originally set for Clifton's sentencing — the parties came before the trial court for a hearing on Clifton's motion to withdraw the plea. Clifton's appointed counsel stated that counsel did not draft the motion and did not join in the motion.

{¶ 33} The court asked Clifton why he wanted to withdraw his plea. Clifton said that he "was under a lot of pressure," his children's mother had just passed away and he did not "want to go away for a long time away from my children." He said that he wanted to "keep fighting" because he felt like he had "[a] better chance of fighting this case."

{¶ 34} Under the trial court's questioning, Clifton admitted that he had been in pretrial detention "like almost 17 months" and that two lawyers had advised him during that time about what his rights were and about the evidence in the case. The court and Clifton had the following exchange:

> THE COURT: And prior to going forward with the plea, you knew the things that were in your motion, didn't you? You knew, in other words, those factors you allege in your motion, you knew those factors, right?
>
> [CLIFTON]: Yeah, I knew those.
>
> THE COURT: All right. And I went through what the charges were and I went through the possible penalties, didn't I?
>
> [CLIFTON]: Mm-hmm.

THE COURT: And I told you the maximum possible prison times and all that stuff, right? I told you that?

[CLIFTON]: Mm-hmm. Yeah.

THE COURT: And [defense counsel] at the time of the plea also indicated that he had advised you as to your rights and what the possible pleas were and stuff like that?

[CLIFTON]: Yeah.

{¶ 35} The state voiced its opposition to the motion, arguing that Clifton had filed his motion to suppress prior to the plea hearing, Clifton was represented during the change-of-plea hearing and the court had advised him of his Crim.R. 11 rights prior to accepting the plea.

{¶ 36} Defense counsel reiterated that he had not drafted the motion to withdraw the plea and stated that he had nothing to add to Clifton's arguments.

{¶ 37} The trial court denied the motion, stating on the record that the court had completed a Crim.R. 11 colloquy prior to accepting the plea, Clifton was represented by "an excellent attorney" and Clifton knew about the arguments he made in his motion at the time that he chose to plead guilty.

{¶ 38} Defense counsel indicated that he was prepared to move forward with sentencing, and the trial court stated that the parties would proceed to sentencing. At that point, Clifton stated that he felt hot, could not breathe and thought he was going to lose consciousness. The court asked the deputies to take Clifton to emergency medical personnel. The hearing was then adjourned, and the court reset the sentencing hearing. The sentencing hearing was continued several times while Clifton remained in "medical isolation" at the Cuyahoga County Corrections Center.

**F. The Second Pro Se Motion to Withdraw the Guilty Plea**

{¶ 39} On June 15, 2021, while in medical isolation, Clifton filed a second pro se motion to withdraw his guilty plea. In the motion, Clifton said that his attorney "forced" him to plead guilty. He said his attorney told him that "[I] would get 55 years" if he did not plead guilty, whereas he would "get 3 years" through a plea. He said that when his attorney told him this, he felt that the attorney did not "want to fight for him." He said that this is why he pleaded guilty. He also reiterated his belief that the Cleveland police illegally searched his house and did not have authority to arrest him. He said he wanted a suppression hearing and a trial.

{¶ 40} The parties came before the trial court for a sentencing hearing on June 30, 2021. The court opened the hearing by asking Clifton about the motion. Clifton said the following about his motion:

> [CLIFTON]: Your Honor, basically I'm not guilty of the charges that I pled to and the only reason that I pled to them is because my attorney advised me to plead to them and he told me basically if I didn't plead I was either going to get 55 years or — in that moment I felt like he ain't willing to represent me. He ain't willing to go with suppression.

{¶ 41} The trial court then recounted the story of a defendant who recently professed his innocence before the court, only to have a jury view the evidence differently and convict him at trial. The court recounted that the defendant in the story could have accepted a plea resolution that would have given him a prison term of between 10 and 15 years, but after trial, the court was required to sentence him to imprisonment for life without the possibility of parole for 26 years. "That's why you have an attorney * * * to tell you the bad about your case as well as the good," the

court said. The court explained that there are inherent dangers and risks with proceeding to trial, including the risk that the jury will make a mistake. The court continued, stating, "That's why your attorney talks to you about this stuff; not that he's not fighting for you, it's that he's trying to get you to see some of the things that he sees as obvious problems and booby traps."

{¶ 42} The court recommended that Clifton "sit down and think about this for a couple days." Clifton responded, "I already made my decision. I've thought about it. * * * I want to withdraw my plea and that's what I would like to do."

{¶ 43} The state objected to Clifton withdrawing his guilty plea.

{¶ 44} The court indicated that it would reset a hearing for the following week. The court closed by saying the following:

> THE COURT: You really need to stop and think about this. It may be the worst decision you've ever made and you've made plenty of bad decisions in your life. We'll set it up for sometime next week.

{¶ 45} The court reconvened on August 11, 2021. The court opened the hearing by summarizing that Clifton had pleaded guilty to four third-degree felonies (amended Count 1, amended Count 3, amended Count 7 and Count 10), two fifth-degree felonies (Counts 9 and 11) and one first-degree misdemeanor (Count 12). The court also summarized the potential penalties for each of those offenses.

{¶ 46} The trial court then noted that a pro se motion to withdraw these guilty pleas remained pending. The court asked for defense counsel's position on the motion. Defense counsel stated that counsel did not file the motion and was not prepared to argue the motion, but he said Clifton filed the motion "because he

thought that there were grounds and still thinks that there are grounds for him to vacate his plea."

{¶ 47} The trial court then asked Clifton for his position, and Clifton reiterated that he was not guilty, wanted a trial date and wanted to suppress the state's evidence.

{¶ 48} The state — opposing the motion — argued first that Clifton's pro se motion "is nothing more than statements made by the defendant" because Clifton was represented and "there is no hybrid representation." The state also argued that the motion was not made for a proper purpose but instead solely because Clifton had changed his mind. The state contended that the plea was made knowingly, intelligently and voluntarily and that the court conducted an adequate Crim.R. 11 colloquy.

{¶ 49} The trial court asked Clifton to respond to the state's argument and then engaged in the following colloquy:

> [CLIFTON]: Your Honor, I'm not guilty of these charges. I want to withdraw my plea because I was forced into that plea.
>
> THE COURT: Who forced you?
>
> [CLIFTON]: I mean, it was a situation to where I felt like if I would have went into suppression at that time, I felt that my attorney, you know, he didn't want to represent me, he didn't want to fight for me at the time.

{¶ 50} The court repeated two stories of defendants who "thought they knew more than their attorneys" and who were sentenced to or facing significant prison terms because they were found guilty at trial despite professing their innocence.

{¶ 51} The court stated that Clifton had been indicted on first-degree drug felonies that would mandate incarceration and carried gun specifications. The court noted that the plea agreement "does away with" all the gun specifications. The court stated that Clifton was "offered a good deal here, a substantial reduction in the charges" and that the court could understand how Clifton's attorney could say that after trial there would be a risk of being sentenced to 55 years in prison. The court also reiterated that it had completed a thorough Crim.R. 11 colloquy and confirmed that Clifton understood the potential penalties, was not being forced to plead and was knowingly, intelligently and voluntarily choosing to plead guilty.

{¶ 52} Clifton responded that he was "under duress" and "wasn't in my right mind" during the change-of-plea colloquy.

{¶ 53} The trial court denied the motion to withdraw the plea, reasoning that Clifton "had well-versed counsel" who appropriately advised Clifton about the relevant potential penalties and the benefits of the plea. The court told Clifton, "[T]here are benefits to the plea that are far beyond what you may think. And also a jury may think differently of the evidence that you have to present."

{¶ 54} The court then proceeded to sentencing.

### G. The Sentencing Hearing and Clifton's Appeal

{¶ 55} The state and defense counsel made arguments in support of their sentencing positions and Clifton addressed the court.

{¶ 56} The court then announced a sentence of 36 months of imprisonment on each of the four third-degree felonies (Counts 1, 3, 7 and 10), 12 months of

imprisonment on each of the two fifth-degree felonies (Counts 9 and 11) and 180 days on the first-degree misdemeanor (Count 12). The court further sentenced Clifton to a fine of $5,000 on each of Counts 1, 3 and 7, for a total fine of $15,000. The court announced that Clifton would be subject to up to three years of postrelease control and would receive jail-time credit in the amount of 581 days. The court ordered the forfeiture of two cars, two guns, scales, drugs and "drug paraphernalia." The court further ordered that Clifton would pay costs and fees. The court ran all of the prison sentences concurrently with each other.

{¶ 57} The court asked counsel for the parties if anyone had questions, comments or changes that need to be made to the sentence. Counsel for the state and Clifton said they did not.

{¶ 58} The court's sentencing journal entry conforms to its oral pronouncement of sentence, except in two respects. First, the journal entry identifies Count 3 as a first-degree felony, when the sentencing hearing clearly indicates that Clifton pleaded guilty to and was convicted of a third-degree felony. Second, the journal entry sets forth that the court entered a nolle prosequi on Count 9, to which Clifton had actually pleaded guilty and for which the court had orally pronounced a sentence of 12 months in prison at the sentencing hearing.

{¶ 59} Clifton appealed his convictions and assigns the following sole assignment of error for our review:

> The trial court abused its discretion by refusing to allow Clifton to withdraw his guilty plea prior to sentencing, and, in doing so, the trial court denied Clifton's rights to due process under the Ohio and U.S.

Constitutions. Ohio Const., Article I, Sections 10 and 16; U.S. Const., 14th Amend.

(Emphasis deleted.)

## II. Law and Analysis

### A. The trial court did not abuse its discretion in denying Clifton's motions to withdraw his guilty plea

{¶ 60} It is within the "sound discretion of the trial court" whether circumstances exist that warrant withdrawal of a defendant's guilty plea. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992). Accordingly, we review a trial court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *Id.*; *see also State v. Johnson*, 8th Dist. Cuyahoga No. 83350, 2004-Ohio-2012, ¶ 34. A trial court abuses its discretion when it exercises its judgment in an unwarranted way. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. *See, e.g.*, *State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 36, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 61} Clifton contends that the trial court abused its discretion by denying his pro se motions to withdraw his guilty plea. Because the trial court did not need to consider Clifton's pro se motions in the first place, and further, because the trial court did not abuse its discretion even considering the merits of the motions, we disagree.

{¶ 62} Clifton sought to withdraw his guilty plea through pro se motions while he was represented by counsel and without asking that his counsel be dismissed or to proceed pro se; his counsel did not join in his motions. Under these circumstances, the trial court could have summarily denied the motions. *See, e.g.*, *State v. Williams*, 8th Dist. Cuyahoga No. 109972, 2021-Ohio-2032, ¶ 15 ("It is well established that '[a] criminal defendant has the right to counsel or the right to act pro se; however, a defendant does not have the right to both, simultaneously, or "hybrid representation."'"), quoting *State v. Powell*, 8th Dist. Cuyahoga No. 107006, 2019-Ohio-346, ¶ 16; *see also State v. Mongo*, 8th Dist. Cuyahoga No. 100926, 2015-Ohio-1139, ¶ 14 (when a criminal defendant is represented by counsel, "a trial court may not entertain a defendant's pro se motion"); *State v. Hagar*, 8th Dist. Cuyahoga No. 108317, 2020-Ohio-910, ¶ 27, 29 ("[B]ecause Hagar was represented by counsel, the court could not entertain his pro se motions to withdraw his guilty plea.").[4] Because the trial court was permitted to summarily deny Clifton's pro se motions, we cannot say that the trial court's denial of the motions on the merits was an abuse of discretion. *See State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75 at ¶ 19 ("A court abuses its discretion when a legal rule entrusts a

---

[4] Clifton directs us to the concurring opinions of Ohio Supreme Court Justice Fischer in *State v. Parker* and *State v. Hackett*, in which the Justice wrote that he would find a constitutional right to hybrid representation in Article I, Section 10 of the Ohio Constitution. *State v. Parker*, 166 Ohio St.3d 1484, 2022-Ohio-1285, 186 N.E.3d 811, ¶ 3 (Fischer, J., concurring); *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 34 (Fischer, J., concurring). Clifton did not request to represent himself or raise the issue of hybrid representation before the trial court, and therefore his argument is not well-taken. *See State v. Pollard*, 8th Dist. Cuyahoga No. 110008, 2021-Ohio-2520, ¶ 10.

decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices.").

{¶ 63} Even if Clifton's counsel had joined his motions, though, we would affirm the trial court's denial of them.

{¶ 64} In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715. But even before the trial court imposes a sentence, a defendant does not have an "absolute right" to withdraw a plea. *Id.* at paragraph one of the syllabus. Before ruling on a presentence motion to withdraw a plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawal of the plea. *Id.* At the hearing, the defendant is entitled to a "'full and fair consideration'" of their motion. *State v. Hines*, 8th Dist. Cuyahoga No. 108326, 2020-Ohio-663, ¶ 8, quoting *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980). A mere "change of heart" regarding a guilty plea is an insufficient justification for the withdrawal of the guilty plea. *See, e.g.*, *Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, at ¶ 35; *State v. Shaw*, 8th Dist. Cuyahoga No. 102802, 2016-Ohio-923, ¶ 6.

{¶ 65} In *Peterseim*, this court held that a trial court does not abuse its discretion in denying a presentence motion to withdraw a plea where the record reflects: (1) the defendant is represented by highly competent counsel; (2) the defendant was afforded a full hearing, pursuant to Crim.R. 11, before they entered the plea; (3) the defendant was given a complete and impartial hearing on the

motion to withdraw the plea and (4) the trial court gave full and fair consideration to the plea-withdrawal request. *Peterseim* at paragraph three of the syllabus; *see also State v. Moore,* 8th Dist. Cuyahoga Nos. 108962, 108963 and 108964, 2020-Ohio-3459, ¶ 57; *State v. Armstrong*, 8th Dist. Cuyahoga No. 103088, 2016-Ohio-2627, ¶ 17; *State v. McKissick*, 8th Dist. Cuyahoga No. 105607, 2018-Ohio-282, ¶ 17.

{¶ 66} In subsequent cases, this court has identified a nonexhaustive list of additional factors for trial courts to consider when deciding a presentence motion to withdraw a plea. *See, e.g.*, *Moore* at ¶ 56; *State v. Walcot*, 8th Dist. Cuyahoga No. 99477, 2013-Ohio-4041, ¶ 19. These factors include: (1) whether the motion was made in a reasonable time; (2) whether the motion states specific reasons for withdrawal; (3) whether the defendant understood the nature of the charges and the possible penalties; (4) whether the defendant was perhaps not guilty or had a complete defense and (5) whether the state would be prejudiced by the withdrawal of the plea. *See, e.g.*, *Moore* at ¶ 56; *Hines* at ¶ 10; *State v. Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio-2269, ¶ 19.

{¶ 67} Here, all of the *Peterseim* factors weigh against allowing withdrawal of Clifton's guilty plea. Several of the other factors weigh in Clifton's favor, but after a thorough review of the record and after considering Clifton's appellate arguments, we conclude that the trial court did not abuse its discretion in denying the motions.

## 1. Clifton was represented by competent trial counsel

{¶ 68} Clifton argues that "there is nothing in the record to show that Clifton's counsel was performing as 'highly competent counsel,'" and he further argues that counsel's failure to affirmatively advocate for Clifton's motions to withdraw the plea shows that counsel was not highly competent.

{¶ 69} The latter argument is not persuasive because this factor is concerned with counsel's performance prior to and contemporaneously with the change of plea. *See, e.g.*, *Peterseim*, 68 Ohio App.2d at 214, 428 N.E.2d 863 (addressing the performance of the counsel who negotiated the plea for the defendant and upon whose advice the defendant accepted the plea agreement); *State v. Glenn*, 8th Dist. Cuyahoga Nos. 109769, 109796 and 109858, 2021-Ohio-1587, ¶ 16 ("Glenn was represented by highly competent counsel *during the plea hearing * * *.*") (Emphasis added.); *State v. Hyche*, 8th Dist. Cuyahoga No. 110709, 2022-Ohio-1587, ¶ 26 ("[T]he trial court specifically made a finding that [the defendant's] prior counsel was 'highly competent' *for purposes of his representation of [the defendant] for the plea*."). (Emphasis added.)  On appeal, Clifton points to no alleged deficiencies with counsel's performance either before or during the change-of-plea hearing, and we do not view counsel's subsequent decision not to join in Clifton's pro se motions as indicating a deficiency that would have affected the validity of Clifton's guilty plea. Thus, we are left to consider whether the record shows that Clifton's counsel was competent as it relates to Clifton's decision to change his plea.

{¶ 70} While courts continue to cite the language from *Peterseim's* syllabus referring to "highly competent counsel," it is well-settled that this factor weighs against allowing withdrawal of a plea when the defendant was represented by competent counsel. It is true that this court in *Peterseim* was swayed by (1) its own observation of the "consistently exemplary quality of work produced by" counsel, (2) the defendant's admission that counsel were "competent and thorough," (3) the prosecutor's acknowledgement that "counsel are two of the finest attorneys in the city," (4) the fact that counsel had obtained all the evidence that the state planned to present at trial prior to negotiating the plea agreement and (5) the trial judge's observation that counsel gave the defendant "'the finest legal service' that he had seen in many years." *Peterseim*, at 214, fn. 3. But since *Peterseim* was decided, courts have consistently weighed this factor against allowing withdrawal when trial counsel was merely competent; in other words, courts do not require that there be some exemplary mark of competence.[5] *See, e.g., State v. Marinchek*, 9th Dist. Medina No. 1258, 1983 Ohio App. LEXIS 14415, 4 (Oct. 26, 1983) ("[T]he plea of no contest was entered with the aid of competent counsel who were working in the best interests of [the defendant]."); *State v. Alls*, 11th Dist. Trumbull No. 3313, 1984 Ohio

---

[5] To be sure, where there are exemplary marks of competence akin to the facts in *Peterseim*, the weight of this factor in the court's analysis will reflect that exemplary competence. *See State v. Ortiz*, 8th Dist. Cuyahoga No. 104689, 2017-Ohio-7400, ¶ 11 (trial court had known defense counsel for over 20 years and saw firsthand that counsel always doggedly pursued discovery from the state); *Hyche* at ¶ 13 (trial court stated that counsel had been an attorney since 1974 and was certified for aggravated murder cases as well as for serving as lead counsel in capital cases); *State v. Askew*, 10th Dist. Franklin No. 21AP-200, 2022-Ohio-1182, ¶ 23 (trial court noted that defendant had been acquitted of attempted murder and other felonies at trial while represented by the same counsel).

App. LEXIS 11983, 3 (Dec. 21, 1984) ("[A]ppellant was represented by competent counsel * * *."); *State v. Sage*, 6th Dist. Erie No. E-84-43, 1985 Ohio App. LEXIS 5603, 4 (Feb. 1, 1985) ("[A]ppellant was represented by a competent attorney and * * * extensive time was spent with appellant by * * * his counsel * * * prior to his entering the pleas of guilty."); *State v. Friedlander*, 8th Dist. Cuyahoga No. 48821, 1985 Ohio App. LEXIS 6270, 4 (Apr. 4, 1985) (trial court determined that counsel represented the defendant "in a competent and professional manner"); *State v. Furl*, 2d Dist. Montgomery No. 8977, 1985 Ohio App. LEXIS 8773, 5 (Sept. 26, 1985); *State v. Parham*, 11th Dist. Portage No. 2011-P-0017, 2012-Ohio-2833, ¶ 20 (attorney was "highly competent" because counsel conferred with the defendant at least twice about the plea agreement, discussing the consequences and benefits of the plea).

{¶ 71} Here, Clifton does not claim that his counsel was ineffective as it relates to the guilty plea. While the record does not contain much detail about counsel's pre-plea representation of Clifton, what we have supports the conclusion that counsel was competent. The trial court selected counsel for appointment in this case. Counsel prepared and filed a motion to suppress. The state and Clifton's counsel reported that the state had exchanged full discovery and "pre-tried" the case to the defense before Clifton decided to accept the plea agreement. Clifton's counsel characterized his consultation with Clifton about the proposed plea agreement as "extensive." Clifton admitted that his counsel advised him of his rights and about the possible plea agreement and at the change-of-plea hearing Clifton said he was

satisfied with his counsel. Clifton ultimately received the sentence that he said his counsel told him to expect. The trial court called counsel "excellent" and "well-versed." The state claims on appeal that Clifton's counsel was "highly competent."

{¶ 72} While Clifton says that he felt "pressured" by his lawyer's advice about the plea offer, feeling "pressured" to enter a plea is not a sufficient basis to withdraw a plea in the absence of evidence of coercion. *See, e.g.*, *Shaw*, 2016-Ohio-923, at ¶ 6–9.

{¶ 73} On this record, and in the absence of any claimed deficiencies in counsel's representation as it relates to Clifton's decision to plead guilty, we find that Clifton was represented by competent counsel. Therefore, this *Peterseim* factor weighs against allowing Clifton to withdraw his guilty plea.

### 2. The trial court conducted a full hearing under Crim.R. 11

{¶ 74} Clifton does not claim that there were any deficiencies in the trial court's Crim.R. 11 colloquy; indeed, Clifton concedes that this factor weighs against allowing withdrawal. Clifton instead argues that we should not afford this factor much weight because of the circumstances of the change-of-plea hearing. He argues that he had been in pretrial detention for over a year prior to the hearing and that his case was repeatedly delayed during the COVID-19 pandemic. He further argues that, on the day of the hearing on his motion to suppress, he was "rushed" to consider a plea proposal that would require him to withdraw his motion to suppress.

He says that, although he chose to accept the plea offer that day, he "immediately realized his mistake" and promptly sought to withdraw his plea.

{¶ 75} This court has considered the amount of time a defendant had to consider a plea offer in evaluating a denial of a motion to withdraw a plea. *See State v. Davner*, 2017-Ohio-8862, 100 N.E.3d 1247, ¶ 51, 59 (8th Dist.). Here, though, Clifton does not claim that his plea was less than knowing, intelligent and voluntary or that he misunderstood anything about the nature of the charges or plea as a result of being rushed. Courts routinely affirm denials of motions to withdraw, even when a defendant reports feeling rushed, in the absence of other factors weighing in favor of allowing withdrawal. *See, e.g.*, *State v. Philpot*, 8th Dist. Cuyahoga No. 110828, 2022-Ohio-1499, ¶ 17, 24; *State v. Terry*, 9th Dist. Lorain No. 01CA007909, 2002 Ohio App. LEXIS 256, 2–3, 5–6 (Jan. 30, 2002).

{¶ 76} The record reflects that, after the defense received full discovery and a "pre-trial" of the state's case, Clifton and his counsel "extensive[ly]" discussed the state's plea offer. Clifton did not request more time to consider the offer, and he expressed no hesitation during the change-of-plea hearing. To the contrary, he reported being satisfied with counsel. Defense counsel informed the court that he believed that "this plea is knowingly, intelligently, and voluntarily made," and the trial court concluded that this was so after its colloquy. The court explained Clifton's rights, the nature of the charges and the possible penalties to defense counsel's and the state's satisfaction, and Clifton points to no error in the colloquy on appeal.

Under these circumstances, the fact that Clifton may have felt rushed is not a basis to disregard the trial court's thorough Crim.R. 11 hearing.

### 3. The trial court conducted an adequate hearing on and fully and fairly considered the motions

{¶ 77} Clifton contends that the trial court did not conduct an adequate hearing on his motions to withdraw the plea. He says that the three in-court proceedings at which the motions were discussed were all supposed to be sentencing hearings and he argues that he should have been provided notice that the court would take up the motions at these hearings. He says that he was without counsel to assist him with presenting evidence at the hearing and did not know the state's position on the motion because the state did not file an opposition brief. Finally, he argues that the trial court "was more of an advocate for the State on this issue and not an impartial finder of fact."

{¶ 78} The scope of a hearing on a motion to withdraw a guilty plea is "dependent upon the facial validity of the motion itself." *State v. Wittine*, 8th Dist. Cuyahoga No. 90747, 2008-Ohio-5745, ¶ 8; *see also State v. Elliot*, 8th Dist. Cuyahoga No. 103472, 2016-Ohio-2637, ¶ 26. "'[B]old assertions without evidentiary support * * * should not merit the type of scrutiny that substantiated allegations would merit.'" *Wittine* at ¶ 9, quoting *State v. Hall*, 8th Dist. Cuyahoga No. 55289, 1989 Ohio App. LEXIS 1602, 2–3 (Apr. 27, 1989). "'The motion to withdraw [the] plea must, at a minimum, make a prima facie showing of merit

before the trial court need devote considerable time to it.'" *Wittine* at ¶ 9, quoting *Hall* at 2.

{¶ 79} Clifton's motions to withdraw his plea consist of little more than a restatement of his arguments for suppression of evidence and a complaint that his lawyer advised him to accept the state's plea offer by comparing a substantial possible prison sentence if Clifton were convicted at trial with the three-year sentence counsel expected through a plea. Clifton did not claim to be innocent in his first motion and, although he said he felt "pressured" by his attorney, he never claimed that he did not understand the nature of the evidence, charges, potential defenses, potential penalties or plea agreement.

{¶ 80} At the hearing on Clifton's first motion to withdraw, the trial court heard from Clifton about why he wanted to withdraw the plea. The trial court further confirmed that Clifton had been represented in the case by two lawyers who had advised Clifton about his rights and the evidence in the case, confirmed that Clifton was aware of the suppression arguments that were in his motion to withdraw at the time that he pleaded guilty, confirmed that the court had informed Clifton of the potential maximum prison sentences on the charges to which he would be pleading guilty and confirmed that defense counsel had advised Clifton about his rights and about the plea offer at the time of the change-of-plea hearing.

{¶ 81} The trial court then denied the motion, stating on the record that the court had completed the Crim.R. 11 colloquy prior to accepting the plea, Clifton was

represented by "an excellent attorney" and Clifton knew about the arguments he made in his motion at the time that he chose to plead guilty.

{¶ 82} At the hearings on Clifton's second motion to withdraw, the trial court again offered Clifton the opportunity to explain why he wanted to withdraw his plea. We view the trial court's statements to Clifton at these hearings as a direct response to Clifton's new argument that his trial counsel pressured him into accepting the plea by contrasting what counsel viewed as a possible or probable posttrial sentence of 55 years with the three-year sentence counsel expected through the plea. While individual judges may handle these circumstances differently, it is clear that the trial court was explaining to Clifton why he felt that defense counsel's advice — as relayed by Clifton — was reasonable and was not a valid basis to withdraw Clifton's plea.

{¶ 83} Clifton complains about a lack of notice regarding when his motions would be taken up and suggests that he would have offered some evidence in support of his withdrawal request but he does not explain on appeal what evidence he was precluded from offering.

{¶ 84} Before ruling on the motion, the court offered defense counsel the opportunity to make arguments, if he wished, then it questioned and heard from Clifton regarding the basis for his motion. After hearing argument from the state opposing Clifton's second motion, the court gave Clifton the opportunity to respond. The court confirmed that Clifton had been informed of and had understood the charges to which he would be pleading guilty, the potential penalties and his

constitutional rights. The trial court further confirmed that no threats or promises had induced his plea and that Clifton had indicated that he was entering his plea voluntarily and of his own free will. The court heard Clifton's complaint about his counsel's advice and determined (1) that the advice was reasonable and (2) that it was not reasonable for Clifton to believe that counsel would not competently defend the case if Clifton chose not to plead guilty. Based on the record before us, we find that the trial court afforded Clifton an adequate hearing and gave full and fair consideration to Clifton's motions.

{¶ 85} Having found that all the *Peterseim* factors weigh against allowing withdrawal, we turn to the additional factors this court has identified as relevant to the consideration of the motions.

## 4. Clifton's motion was timely and specific

{¶ 86} The state concedes that Clifton made his motion within a reasonable time. The motions also state specific reasons for the withdrawal, namely that Clifton believed he had strong arguments for suppression of evidence but pleaded guilty because he had come to believe that his attorney would not vigorously present those arguments after the attorney told him that he "would get 55 years" if he did not plead guilty, whereas he would "get 3 years" through a plea. At the hearing on the second motion, Clifton also said he was actually not guilty of the charges to which he had pleaded guilty. Therefore, these two factors weigh in Clifton's favor.

### 5. Withdrawal would not prejudice the state

{¶ 87} The state does not claim that it would have been prejudiced if the court allowed Clifton to withdraw his plea and we see no prejudice to the state either. There is nothing in the record to suggest that any witness would be unavailable or that the state's case would be otherwise prejudiced, particularly in light of the extremely short amount of time that passed between Clifton's plea and his first motion to withdraw it. *See State v. Patterson*, 2d Dist. Montgomery No. 26015, 2014-Ohio-4962, ¶ 9 (no prejudice to the state where no witness would become unavailable and where the defendant asked to withdraw his plea less than one month after entering the plea). This factor, too, weighs in Clifton's favor.

### 6. Clifton understood the charges and possible penalties

{¶ 88} Clifton has never claimed that he did not understand the nature of the charges against him or the possible penalties and he does not make that claim on appeal either. Indeed, Clifton acknowledged during the May 20, 2021 hearing that the court had advised him about the charges and potential penalties and that his counsel had advised him about his rights and the potential plea offer. The court conducted a Crim.R. 11 colloquy that the state and Clifton's counsel agreed was complete, and during the colloquy Clifton reported that he was satisfied with his counsel. *Compare Hines*, 8th Dist. Cuyahoga No. 108326, 2020-Ohio-663, at ¶ 13, 17–18 (defendant should have been allowed to withdraw his plea when he was "blindsided" by events at the change-of-plea hearing, based in part on lack of

communications with and inconsistent advice from his counsel of record and substitute counsel) and *State v. Downs*, 8th Dist. Cuyahoga No. 46428, 1983 Ohio App. LEXIS 13899 (Oct. 13, 1983) (defendant was misled about the maximum penalty he faced because his counsel mistakenly gave him incorrect advice). The record here does not reflect that Clifton was confused or lacked understanding about his plea. Indeed, Clifton received the exact sentence that Clifton said his counsel told him to expect — three years in prison. This factor, therefore, weighs against Clifton.

### 7. Clifton's claim that he is not guilty was insufficient

{¶ 89} Where a defendant enters a guilty plea without asserting innocence, it is presumed that the defendant understands that they have admitted their guilt. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 19; *State v. Reeves*, 8th Dist. Cuyahoga No. 100560, 2014-Ohio-3497, ¶ 12. Clifton entered his guilty pleas without asserting innocence and, therefore, we presume that he understood that he was admitting his guilt by pleading guilty. Moreover, the trial court confirmed that Clifton understood that by pleading guilty, he would be admitting to the relevant facts and his full guilt to the charges:

> THE COURT: * * * Do you understand that you are presumed innocent in this case and that by entering a plea of guilty to the amended indictment that you admit to the truth of those facts and your full guilt?
>
> [CLIFTON]: Yes.

{¶ 90} Clifton's first explanation for moving to withdraw his plea was that he "was under a lot of pressure," his children's mother had just passed away and he

did not "want to go away for a long time away from my children." He said that he wanted to "keep fighting" because he felt like he had "[a] better chance of fighting this case." He did not claim to be innocent of the charges.

{¶ 91} During the hearing on Clifton's second motion to withdraw his plea, Clifton claimed for the first time that he is not guilty of the charges against him.[6] However, beyond the blanket conclusion that he is not guilty, Clifton offered no evidence or defense to the trial court — and he offers none on appeal — supporting his factual innocence. This court has consistently held that the

> defendant's protestations of innocence are not sufficient, however frequently repeated, to warrant grounds for vacating a plea knowingly entered. By inference, all defendants who request a withdrawal of their guilty plea do so based upon some claim of innocence. A mere change of heart regarding a guilty plea and the possible sentence is insufficient justification for the withdrawal of a guilty plea.

(Citations omitted.) *State v. Abdelhag*, 8th Dist. Cuyahoga No. 71136, 1997 Ohio App. LEXIS 3394, 10-11 (July 31, 1997); *see also State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146, ¶ 27 (when considering a request to withdraw a guilty plea, the trial court "'must determine whether the claim is anything more than the defendant's change of heart about the plea agreement'"), quoting *State v. Kramer*, 7th Dist. Mahoning No. 01-C.A.-107, 2002-Ohio-4176, ¶ 58.

---

[6] Clifton stresses in this appeal that, prior to the change of plea, he filed several pro se motions claiming that he would never accept a plea agreement, was ready for trial and wanted a prompt trial. These requests were not actual statements of innocence. Moreover, Clifton did ultimately decide to plead guilty.

{¶ 92} Clifton contends that his suppression argument was reasonable grounds to withdraw the plea because "[h]e alerted the court to the existence of strong legal and factual grounds for suppression of the seized evidence, which, if suppression was granted, would have disabled the prosecution against him." But, as the trial court noted, Clifton knew the grounds for the motion prior to pleading guilty. Courts have held that it is not an abuse of discretion to deny a presentence motion to withdraw a guilty plea where the motion was based upon an alleged complete defense of which the defendant had knowledge when he entered the plea. *See State v. Crawford*, 2d Dist. Montgomery No. 27046, 2017-Ohio-308, ¶ 16; *State v. Spurgeon*, 2d Dist. Greene No. 2014-CA-12, 2014-Ohio-4849, ¶ 20–21.

{¶ 93} Clifton's motions to withdraw his plea seem to be predicated not on any misunderstanding about the charges, potential penalties, plea proceedings or his potential arguments for suppression, but rather on "buyer's remorse" after the tragic and unexpected death of his children's mother.

{¶ 94} Clifton obviously felt — and still feels — that he had a meritorious suppression argument; he repeatedly said he would not accept a plea agreement and wanted to go to trial prior to hearing the state's plea offer. But after "extensive" discussions with competent counsel, Clifton chose to forgo that suppression argument and to give up his right to a trial in favor of a plea agreement that substantially limited his exposure for lengthy imprisonment and under which his counsel expected that Clifton would receive a three-year prison sentence. Clifton

does not claim any misunderstanding about what he was getting or giving up in pleading guilty.

{¶ 95} The collateral consequences of serving an imprisonment sentence obviously changed for Clifton when his children's mother passed away. At that point, Clifton seems to have felt that the potential benefits of pursuing suppression and a trial — including the possibility to return home to his children if his defense were successful — outweighed the risks of rejecting the state's plea offer and exercising his right to a trial. But this post-hoc reconsideration of the benefits of the plea is not a "reasonable and legitimate basis for the withdrawal of the plea." *Xie,* 62 Ohio St.3d at 527, 584 N.E.2d 715. The record supports the trial court's conclusion that Clifton failed to demonstrate any basis for withdrawing his plea other than a change of heart. Accordingly, the trial court did not abuse its discretion in denying Clifton's motions to withdraw his guilty plea.

{¶ 96} We, therefore, overrule Clifton's assignment of error. While we affirm Clifton's convictions, we determine that there are several clerical errors in the trial court's journal entries.

### B. We remand this matter for a corrected journal entry fixing clerical errors regarding Count 3 (as amended) and Count 9

{¶ 97} The record clearly shows that Clifton pleaded guilty to Count 9. The trial court announced an oral sentence of 12 months in prison on Count 9 at the sentencing hearing and ordered that the sentence be served concurrently with the sentences on the other counts of conviction. Despite these proceedings, the trial

court's journal entries regarding the change-of-plea hearing and the sentencing hearing erroneously state that Count 9 was dismissed through a nolle prosequi.

{¶ 98} Further, the record clearly reflects that Clifton pleaded guilty to an amended Count 3, which amendment eliminated the firearm and juvenile specifications and lowered the drug amount such that Count 3 was a third-degree felony after the amendment. The trial court's journal entry regarding the change-of-plea hearing erroneously stated that Clifton pleaded guilty to a first-degree felony. The trial court corrected this error through a nunc pro tunc entry. But the trial court's sentencing journal entry also erroneously indicated that Clifton pleaded guilty to and was sentenced on Count 3 as a first-degree felony, and this error was never corrected.

{¶ 99} We take notice of these clerical errors in the change-of-plea and sentencing journal entries and remand this matter for the trial court to issue a corrected journal entry. *See, e.g.*, *State v. Ketchum*, 8th Dist. Cuyahoga No. 109490, 2021-Ohio-1583, ¶ 34 (remanding for correction of a clerical error that erroneously stated that the court had issued a Crim.R. 29 judgment of acquittal, when actually the trial court had dismissed the count without prejudice on motion of the state); *State v. Harper*, 8th Dist. Cuyahoga No. 111193, 2022-Ohio-3329, ¶ 14 (remanding for correction of a clerical error regarding jail-time credit in a journal entry); *State v. Pugh*, 8th Dist. Cuyahoga No. 111099, 2022-Ohio-3038, ¶ 10 (remanding for correction of a clerical error that erroneously stated that the court had sentenced a defendant for "aggravated burglary," when the record clearly showed that the

defendant had pleaded guilty to and been sentenced on an amended count of burglary).

## III. Conclusion

{¶ 100} Having overruled Clifton's sole assignment of error for the reasons stated above, we affirm his convictions.

{¶ 101} Having noted clerical errors in the trial court's change-of-plea and sentencing journal entries, we remand this matter for the trial court to enter a corrected journal entry that correctly identifies that (1) Count 9 was not dismissed through a nolle prosequi, (2) Clifton pleaded guilty to Count 9, (3) the trial court sentenced Clifton to 12 months in prison on Count 9 to be served concurrently with the other sentences the court announced and (4) the amended Count 3 to which Clifton pleaded guilty and for which the trial court imposed sentence was a third-degree felony, not a first-degree felony.

It is ordered that the appellee recover from the appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, A.J., CONCURS IN JUDGMENT ONLY

SEAN C. GALLAGHER, A.J., CONCURRING IN JUDGMENT ONLY:

{¶ 102} I respectfully concur in judgment only. Although Clifton mentioned one of the clerical errors in his recitation of the procedural history of this case, he has not asked for any relief therefrom. A trial court maintains continuing jurisdiction to correct clerical mistakes, and therefore, in my opinion, any error correction should begin with the parties filing a motion to correct the sentencing entry with the trial court in this case solely because neither party has sought the relief, claimed any prejudice from the mistakes or otherwise asked for the error to be corrected in the direct appeal. *See, e.g., State v. Pugh*, 8th Dist. Cuyahoga No. 111099, 2022-Ohio-3038, ¶ 27, or *State v. Kauffman*, 2021-Ohio-1584, 170 N.E.3d 952, ¶ 20 (8th Dist.).

{¶ 103} I acknowledge that my approach appears nonsensical given the clerical nature of the errors discussed by the majority, but if the parties are not requesting the relief after acknowledging the existence of error, then at this point it is incumbent on them to seek redress through the trial court. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting

*State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part).